

FILED
11/17/2021 MO
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHRISTOPHER HANLEY,

    Plaintiff,

v.

XL TOWING & STORAGE, INC.,
SHERRY DI VITO, individually and as
owner/registered agent of Xl Towing & Storage,
Inc., MARCUS HARRIS, individually and as
registered operator/driver for Xl Towing &
Storage, Inc., WESTERN NATIONAL
INSURANCE GROUP, PIONEER SPECIALTY
INSURANCE CO.

    Defendants.

**CASE NO. 21 C 2256**

**JUDGE ALONSO**

**MAGISTRATE JUDGE FINNEGAN**

**PLAINTIFF'S SECOND AMENDED COMPLAINT WITH JURY DEMAND**

NOW COMES Christopher Hanley, on behalf of himself, states his Second Amended Complaint and shows to this Honorable Court as follows:

## GENRAL ALLEGATIONS

1. Jurisdiction is conferred upon this Court by 28 USC §§ 1331 and 1332(a).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because some Defendants reside in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including business activity and injury.

3. That this case involves the fraudulent, illegal, and predatory towing practices of XL TOWING & STORAGE, INC., perpetrated against hundreds of people in the city of Chicago.

4. That Plaintiff is a citizen of Canada, and domiciled in British Columbia Canada. Plaintiff has never been a citizen of Illinois or Minnesota.

5.   That Defendant, XL TOWING & STORAGE INC, exists under the laws of the State of Illinois with its principal place of business being located at 3565 W Columbus Ave, Chicago, Illinois 60652, and at all times relevant hereto, conducting business in the County of Cook, State of Illinois. Herein, "XL TOWING" may refer to XL TOWING & STORAGE, INC.

6.   That based upon information and belief, Defendant SHERRY DI VITO is the owner and resident agent of XL TOWING, is a citizen of Illinois, and at all times relevant hereto was registered to do business as the owner and registered agent of XL TOWING, in the County of Cook, State of Illinois.

7.   That Defendant MARCUS HARRIS was a driver for XL TOWING and a citizen of Illinois.

8.   That Defendant WESTERN NATIONAL INSURANCE GROUP is a mutual insurance company organized under the laws of the State of Minnesota and registered with the Minnesota Commerce Department. WESTERN NATIONAL INSURANCE GROUP is licensed with the Illinois Department of Insurance to do business in the State of Illinois as a foreign corporation. Herein, "WESTERN NATIONAL" may refer to WESTERN NATIONAL INSURANCE GROUP.

9.   That DEFENDANT PIONEER SPECIALTY INSURANCE Co. is a subsidiary of WESTERN NATIONAL, has been incorporated in the State of Minnesota since 2008, and has been licensed to do business in the State of Illinois as a foreign corporation since 2010. Herein, "PIONEER" may refer to PIONEER SPECIALTY INSURANCE Co.

10.   That the towing and business practices of Defendants caused Plaintiff substantial injury and costs.

11.   That the amount in controversy herein exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests, costs, and attorneys' fees.

## **INTRODUCTION**

12.  XL TOWING routinely tows parked vehicles without regulatory and statutory permission or compliance.

13.  This occurs at various parking lots which includes, but is not limited to: 770 W Gladys Ave in the City of Chicago.

14.  This illegal, exploitative, and predatory towing is routinely done in violation of city ordinances, Illinois statutes, contracts with parking lot property owners, posted signs, common law doctrine, and other regulations.

15.  Defendants have deprived, and continue to deprive, Plaintiff and other vehicle owners and secured parties of their property, due process, and equal protection rights protected under the 1st, 8th, and 14th Amendments to the United States Constitution, all in violation of 42 U.S.C. § 1983.

16.  Such unconstitutional acts include, but are not limited to: (a) failing to provide notice to vehicle owners of their rights and protections afforded to them under city and state towing regulations and statutes specifically required and noted as the "TOWING BILL OF RIGHTS"; (b) charging and requiring illegitimate and excessive towing and storage fees for the return of impounded vehicles; (c) unilaterally determining towing and storage fees and then demanding pre-payment of such fees from vehicle owners as a prerequisite to such aggrieved parties obtaining a judicial hearing to challenge vehicle impounds or fees they are being charged; and (d) barring vehicle owners from being compensated for the loss of that property where the loss constitutes a "taking" under the Fifth Amendment of the Constitution.

17.  XL TOWING consistently and unreasonably:

    A.  Based on information and belief, tows vehicles in violation of contracts with parking lot owners;

B. Fails to properly record the information as required by Illinois and Chicago law pursuant to MCC 9-84 et. seq.;

C. Withholds, omits, and/or obscures access to the 'TOWING BILL OF RIGHTS' notice which they are required to present pursuant to 9-84 et. seq.;

D. Damages vehicles both during the tow, and/or after the tow by storing the vehicles in a location that is often too overfilled with other impounded vehicles and sharp objects, and when storage is overfilled will place vehicles outside of lot fully exposed without gated protection to properly prevent access to vehicles;

E. Makes false statements and representations on tow receipts;

F. Contracts with private lot owners without installing or maintaining requisite signage pursuant to MCC 9-84 et. seq.;

G. Uses deceptive signage to create 'tow zone' traps that continues to this day.

18. XL TOWING used deception and threat, consort and collusion, to gain unauthorized control over Plaintiff's property and vehicle, and attempted to permanently deprive Plaintiff of property and rights.

19. XL TOWING's illegal and predatory towing practices not only victimized Plaintiff and other similarly situated individuals whose vehicles have been improperly towed, but threaten and erode confidence in public policy and commerce in the areas in which they operate. Businesses located near lots where XL TOWING operates lose customers who are unwilling to park in their proximity, or are otherwise dissuaded because their vehicle may disappear as a result of rogue towing, and then be forced to pay ransom to retrieve their vehicle.

20. Upon information and belief, Plaintiff and other vehicle owners incur actual damages and costs which include, but are not limited to: illegitimate towing fees, additional fees for storage even when the delay is caused by Defendants, costs of replacement transportation, and costs of repairing vehicles which were damaged by XL TOWING in the process of towing the vehicle.

4

21. In addition to the costs associated with retrieving their vehicles, consumers remain obligated to pay the expenses associated with vehicle ownership, such as lease or loan payments and/or insurance premiums during a period of time in which they did not have access to or control over their vehicles.

22. As of June 22, 2016 XL TOWING has been under the authority and regulated under rules and requirements that were implemented in the city of Chicago with regards to towing practices, pursuant to MCC 9-84.

23. XL TOWING continues to tow vehicles in violation of the MCC 9-84.

24. Xl TOWING continues to omit and obscure specific provisions within MCC 9-84 known as the Chicago 'TOWING BILL OF RIGHTS' that give vehicle owners access to their clearly defined rights and protections afforded to them.

25. On information and belief WESTERN NATIONAL and PIONEER directly interfered with Plaintiff's requests to XL TOWING for required evidence production pursuant to MCC 9-84 et. seq.

26. Through information and belief, WESTERN NATIONAL and PIONEER have aided, and otherwise assisted XL TOWING in their predatory actions by affording financial protection and security whilst knowing that the tows by XL TOWING are illegitimate. WESTERN NATIONAL has failed to produce any report or communications with XL TOWING in relation to the factual information regarding contracts and illegal towing practices that would indicate otherwise.

27. WESERN NATIONAL has continued to ignore and interfere with Plaintiff's requests with regard to the legal requirements of XL TOWING.

28. On information and belief WESTERN NATIONAL and PIONEER interfered, aided, and/or encouraged XL TOWING in efforts to destroy and/or withhold evidence.

29. On information and belief, XL TOWING engaged in and affected interstate commerce, because their operations involved victims whose vehicles were registered outside the state of Illinois or United States, and/or involved victims outside the State of Illinois or United States and the towing of those vehicles impeded their owners from returning to their place of residence.

### FACTS

30. Plaintiff owned and operated a vehicle which was parked in a parking lot at 770 W Gladys Ave in CHICAGO, ILLINOIS on or about April 27, 2018.

31. On or about April 27, 2018, Plaintiff was patronizing a restaurant in adjacent building to where his vehicle was parked.

32. At the time of Plaintiff's patronage on April 27, 2018, no notice or signs regarding XL TOWING or the parking lot owner appeared at the point of entry to the real property, off Gladys Ave, or were visible where Plaintiff's vehicle was parked.

33. When Plaintiff returned to the parking space on the evening of April 27, 2018, his vehicle was gone.

34. Plaintiff called the Chicago Police Department to report his vehicle stolen.

35. The Chicago Police 311 Dispatch Department found no record of the vehicle being towed or called in.

36. In an effort to determine what had happened to his vehicle Plaintiff entered another restaurant closest to the parking lot where he was parked to ask for help and to recharge his phone as its battery was now spent.

37. The employees at the bar informed Plaintiff of the towing problems in that lot, and that they witnessed his vehicle being towed, and informed him that there were tow company signs hiding somewhere in the lot and to look around and behind the other parked vehicles.

6

38.   Plaintiff found 3 signs, of which 2 were obscured from view by other vehicles, and a 3rd posted on the opposite side of a nonworking gated fence facing W Jackson Blvd, completely unseen and unknown to anyone entering the lot from the only entrance on W Gladys Ave. The obscured signage inside the parking lot was also distinctly void of party designation as to whom the parking lot was for.

39.   On and before April 27th, 2018, and continuing until the date of this filing, upon information and belief, XL TOWING has been contracted to monitor the parking lot at 770 W Gladys Ave in Chicago. They took on this responsibility with little to no regard to the city chapter MCC 9-84 that regulates signage and towing practices within Chicago.

40.   There were also, and until date of this filing, no other signs stating who the lot is for which as required under MCC 9-84 et. seq., and with its proximity to several restaurants on the same block, and in the same building, it would appear that the lot was for the businesses in this building. This has been confirmed by local police and alderman.

41.   Plaintiff has reason to believe and does believe that this lack of signage is being done intentionally in order to create a "private tow zone" trap that XL TOWING then uses to grab cars and tow them to their storage.

42.   On April 27, 2018, XL TOWING carried out an unauthorized tow and removed plaintiff's vehicle from the parking lot at 770 W Gladys Ave in Chicago.

43.   After discovering the phone number on the sign, Plaintiff contacted XL TOWING and pleaded to the agent about the signage and that it was unreasonable to take vehicle, and demanded it be released.

44.   An employee or other person acting as an agent for XL TOWING refused to release vehicle and instructed that Plaintiff had to travel to their yard to retrieve his vehicle.

45.   Plaintiff had to contact LYFT, a ride sharing service, to meet the tow truck driver MARCUS HARRIS at the XL TOWING yard at 3565 W Columbus Ave in Chicago. MARCUS HARRIS by his own and under the instruction of SHERRY DI VITO, owner of XL TOWING, carried out the unauthorized tow.

46.   When Plaintiff arrived at tow yard, he called local police to assist with retrieving his vehicle and 2 officers were dispatched.

47.   Plaintiff plead again with MARCUS HARRIS at the XL TOWING yard about the signage and the tow fee and demanded his vehicle be returned. MARCUS HARRIS told Plaintiff he didn't want to "deal" with him and threatened to withhold releasing the vehicle and that he would force Plaintiff to come back in the morning to retrieve his vehicle.

48.   The Chicago Police were not informed and educated about the towing regulation and city ordinances and did not know to notice that there was no 'TOWING BILL OF RIGHTS' posted at XL TOWING's yard, and did not know they were to enforce the violation. They also did not know to ask for the details surrounding the tow, including video and photos, and to determine that it was a valid tow or not. Further they were not aware they were to make sure Plaintiff was handed a copy of the 'TOWING BILL OF RIGHTS' when retrieving his vehicle.

49.   Pursuant to Plaintiff's knowing, information and belief, plaintiff has reason to believe and does believe and that XL TOWING and its owner SHERRY DI VITO are aware of the lack of oversight by the CHICAGO Police Department and intended, and intends to take advantage of the lucrative blind spots in Chicago oversight with regards to towing enforcement.

50.   Desperately needing to recover his vehicle, Plaintiff had no other choice but to pay this fee under duress to retrieve his vehicle, despite the illegitimateness of the situation and suspicion of foul play.

51.   Plaintiff is grateful the police were present otherwise MARCUS HARRIS likely would have made good on his threat to force Plaintiff to return the next day to retrieve his vehicle.

52.   After taking Plaintiff's credit card though the fence and walking to a building in back of lot, MARCUS HARRIS handed Plaintiff a handwritten receipt which contained strange wording including specific false and deceptive notations and representations regarding the tow and the condition of Plaintiff's vehicle. These representations were inconsistent with details presented about the tow and were not possible based on other obvious actions claimed taken by MARCUS HARRIS and XL TOWING.

53.   Plaintiff was not given a copy of the CHICAGO TOWING BILL OF RIGHTS with tow receipt by MARCUS HARRIS, XL TOWING, or anyone acting as an agent for the corporation.

54.   These circumstances are a direct violation of MCC 9-84-036 by MARCUS HARRIS, XL TOWING, and SHERRY DI VITO.

55.   Being exhausted and significantly distressed, Plaintiff slept in his vehicle for the remainder of the morning. Upon waking the next day and in the daylight, Plaintiff found fresh damage to the right side of his vehicle that was not there the previous night, before he parked his car at the lot at 770 W Gladys Ave. Plaintiff's vehicle was also now pulling to one side while driving.

56.   Soon after finding the damage to his vehicle, Plaintiff called XL TOWING and XL TOWING's insurance, PIONEEER and WESTERN NATIONAL, and reported the damage, and requested a meeting with a manager or the owner of XL TOWING.

57.   Plaintiff received a call from SHERRY DI VITO who first requested that photos of the damage be sent to her, then called back and agreed to look at the vehicle at XL TOWING's business office at 411 North Wolcott Street, Chicago, IL 60622.

58.   Plaintiff returned to Chicago to meet with Ms. DI VITO, presented the vehicle and the new damage, and asked how the damaged occurred, and how they were able to unlock the vehicle to release the parking brake.

59.   Ms. DI VITO informed Plaintiff that the vehicle was not entered in order to tow, however Plaintiff did engage the parking brake the night he parked in the lot at 770 W Gladys Ave, making a tow impossible with the towing equipment used without disengaging the parking brake.

60.   Ms. DI VITO looked at the fresh damage and said she would look over the video footage and get back to Plaintiff regarding the matter.

61.   Plaintiff left Chicago the day of April 28, 2018, and while driving at highway speeds, heard a new sound of air seeping through the driver door.

62.   Upon inspection, Plaintiff found rust marks from apparent tools used to pry open the door to enter the vehicle, and that the door had been bent and further damaged from MARCUS HARRIS and/or agents of XL TOWING, when unlawfully entering the vehicle.

63.   Plaintiff's vehicle was also pulling to one side on the highway, and an inspection and alignment was done at a local Firestone tire shop, and more damage was found underneath vehicle caused from the tow boom.

64.   Plaintiff attempted several times to follow up with Ms. DI VITO regarding the tow and damage, but never heard from XL TOWING or its owner SHERRY DI VITO again.

65.   Defendant WESTERN NATIONAL had stepped in and took over all communication and advisement for XL TOWING regarding the tow and damage of Plaintiff's vehicle, and afforded XL TOWING further safe opportunity to ignore and avoid accountability and Plaintiff's requests.

66.   Three months later WESTERN NATIONAL finally sent an adjuster to inspect the damages from the tow, however that was the only inquiry into the matter by WESTERN NATIONAL. WESTERN NATIONAL has never contacted Plaintiff to investigate the details that Plaintiff experienced the night of the tow and after.

67.   The adjuster informed Plaintiff and WESERN NATIONAL that the damages looked like they were caused from a tow and that the estimate to repair the damages equaled $4477.76.(Exhibit B) WESTERN NATIONAL ignored the adjuster's advisement and ignored Plaintiff's claim.

68.   After receiving no help or assistance, or fair treatment from WESTERN NATIONAL, or XL TOWING and its owner SHERRY DI VITO, Plaintiff began to look for regulation and laws and learned of Chicago Municipal Code 9-84, which was adopted in 2016 to help the city of Chicago better address towing issues and to create a more fair environment for both consumer and business owner, as per its drafters.

69.   After learning of the rights and protections afforded and contained therein, most specifically the right to video and audio footage from all tows within Chicago, Plaintiff requested this material from WESTERN NATIONAL, XL TOWING and its owner SHERRY DI VITO.

70.   Plaintiff has demanded many times to WESTERN NATIONAL and XL TOWING that the video footage from the towing of his vehicle be made available for inspection as required by MCC 9-84-025(b), as well as all relevant reports and findings from the alleged investigations performed by WESTERN NATIONAL in relation to the towing of Plaintiff's vehicle. This material has never been produced.

71.   Plaintiff has attempted to address the matter with WESTERN NATIONAL multiple times yet, WESTERN NATIONAL and XL TOWING have refused to address any relative accountability regarding the specifics about what happened the night Plaintiff's vehicle was towed, or the violations and required rights and evidence production outlined in MCC 9-84 et. seq.

72.   After weeks of being ignored by WESTERN NATIONAL and XL TOWING, Plaintiff sought help from the office of Alderman Pawar, one of the original drafters of MCC 9-84.

73.   Alderman Pawar and his staff assisted Plaintiff by requesting the video, audio, and relative photos from XL TOWING and SHERRY DI VITO, and made several requests for the required material.

74.   SHERRY DI VITO finally answered the Alderman's office but completely ignored the request or any reference to the video, audio, or relevant photos, and instead forwarded to them very select photos that did not show specifics that were extremely relevant to the night of the tow and the condition of Plaintiff's vehicle, and the lack of care that was taken while carrying out the towing of Plaintiff's vehicle. Some of these photos were also intentionally altered.

75.   Alderman Pawar then recommended that Plaintiff file a complaint.

76.   After weeks of investigation, and weeks of being ignored by both WESTERN NATIONAL and XL TOWING, Plaintiff filed a complaint with the Chicago DEPARTMENT OF BUSINESS AFFAIRS AND CONSUMER PROTECTION to challenge this tow and/or the reasonableness of the towing and storage fees. A separate investigation into the events surrounding the night of the tow was done by the BACP, and they found the tow to be unauthorized and done knowingly through deceptive practices, and several sections of Chapter 9-84 were found that XL TOWING, its driver MARCUS HARRIS, and SHERRY DI VITO, were in violation of with regards to their business practices and the towing of Plaintiff's vehicle. The BACP also charged XL TOWING with violating the CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT. (See Exhibit A)

77.   XL TOWING and its owner SHERRY DI VITO plead liable to these violations, and an order was issued to XL TOWING and its owner SHERRY DI VITO to come into immediate compliance with any code violations. XL TOWING has refused to this day to comply and continues to tow an unknown number of vehicles from parking lots including but not limited to 770 W Gladys Ave without authorization and/or compliance. This was confirmed by police and alderman in the districts where XL TOWING operates.

78.   Defendants WESTERN NATIONAL and PIONEER were made aware of the violations by their client XL TOWING, and that they were required to produce video, audio, and relative photos that would substantiate and/or deny any claims made by XL TOWING with regards to the nature and specifics that were carried out the night of the tow.

79.   WESERN NATIONAL has continued to ignore and interfere with Plaintiff's requests with regard to any legal requirements of XL TOWING, and accountability thereof.

80.   Plaintiff forwarded a final demand letter addressing then current damages to both WESTERN NATIONAL and XL TOWING, and its owner SHERRY DI VITO, pleading with defendants to make good on the claims and violations and to make Plaintiff whole.

81.   This notice from Plaintiff was completely ignored by XL TOWING and WESTERN NATIONAL. WESTERN NATIONAL only responded after Plaintiff inquired a second time about proof of receipt of the notice. Plaintiff then received a brief email referencing another investigation they did into the matter which once again excluded any testimony or evidence presented by Plaintiff. The email also contained false statements, claims and representations regarding factual allegations related to this case.

82.   WESTERN NATIONAL claims to have done an investigation initially in 2018 yet they never contacted Plaintiff once during this investigation. Subsequently in 2020 another investigation was allegedly done and once again no testimony, affidavit, story or evidence was collected from Plaintiff regarding the details Plaintiff experienced the day of the tow and after. Policy definitions and insurance regulation in Illinois requires that an investigation based on all available information be conducted.

83.   215 ILCS 5 also requires an accurate explanation of the basis in insurance policy or applicable law for denial of claims and any matter or requests related to the claim or settlement.

84.   Plaintiff has reason to believe and does believe that WESTERN NATIONAL advised and/or encouraged XL TOWING and its agents not to engage with Plaintiff and to ignore any requests or demands for required recordings and data material and therefore interfered and allowed an opportunity for XL TOWING to omit and/or destroy evidence.

85.   On information and belief WESTERN NATIONAL directly interfered with Plaintiff's requests to XL TOWING for required evidence material pursuant to MCC 9-84 et. seq., and has refused to provide explanation as to why any of the omissions have and are taking place, or why any the material isn't being produced, while at the same time making reference to the required material.

86.   Based on information and belief Plaintiff has reason to believe and does believe that WESTERN NATIONAL aided XL TOWING in the spoliation of evidence.

87.   Plaintiff has reason to believe and does believe that WESTERN NATIONAL and PIONEER were involved in this activity and based upon the information presented to them by Plaintiff, and their failure to provide the discovery related to the requests made in relation to the case, Plaintiff's allegations appear to be confirmed, that WESTERN NATIONAL and PIONEER are directly involved in the unscrupulous conduct.

88.   As a result of Defendant's actions, Plaintiff and others similarly situated, known and unknown, upon information and belief, suffered actual and substantial damages.

## CHICAGO MUNICIPLE CODE AND TOWING REGULATION

89.   Illinois law regulates the practice of towing vehicles in private parking lots within Chicago pursuant to MCC 9-84 et. seq.

90.   Pursuant to MCC 9-84 et. seq., private tow operators are authorized to tow vehicles from private tow lots after meeting specific requirements as outlined therein.

91.   "Within 30 minutes after relocating any unauthorized vehicle, the relocator shall notify the Chicago Police Department by using the nonemergency police telephone number to report the year, make, model and state license plate number of the relocated vehicle and the location from which the vehicle was relocated. In addition to this notification, within 24 hours after relocating an unauthorized vehicle, the relocator shall submit a written report to the superintendent of police containing the following information: (1) Name, address and telephone number of the relocator and of the operator; (2) State license plate number of the vehicle relocated; (3) Vehicle identification number of the vehicle relocated; (4) Color, make and model of the relocated vehicle; (5) Date and time of the relocation; (6) Address of place from which vehicle was relocated; (7) Names and addresses of any witnesses to the relocation; (8) Name of person with whom the relocation agreement was made; (9) Address of place where the vehicle is stored; and (10) State license plate number of the tow truck which made the relocation." MCC 9-84-010(a)

92.   "Prior to relocating any unauthorized vehicle, the relocator or operator shall first obtain written consent from the owner of the private property or such owner's authorized agent to relocate the specific vehicle in question, unless the relocator has an agreement with the owner or agent to relocate all unauthorized vehicles from such owner's private property. Each year, beginning on the effective date of this amendatory ordinance of 2016, each relocator shall provide the Chicago Police Department with a list of all locations where the relocator has an active contract or other agreement in place with an owner to remove unauthorized vehicles from such owner's private property. This list shall clearly indicate whether the contract or agreement authorizes the relocator or operator to patrol or remove vehicles from the owner's private property only upon request by the owner. The Chicago Police Department shall organize the lists required under this subsection by police district and shall provide a copy of the applicable list to each district commander annually." MCC 9-84-010(c)

93. "When any owner enters into an agreement with a relocator to relocate unauthorized vehicles from such owner's private parking area, the relocator shall post a notice of this arrangement prominently at all entrances and exits to the parking area(s), in clear view, and free from interference from any natural or manmade objects, and positioned with the bottom of the sign not less than 4 feet, and not more than 7 feet, above ground level. The lettering on these signs shall be in prominent type at least three inches high and in a color that contrasts with the background color of the sign. The sign, which shall also be legible at night, shall contain the following information: (1) A general statement indicating who is allowed to park in the area. The statement may use classes of persons as well as individuals; (2) A warning that unauthorized vehicles will be relocated; (3) The name, address and telephone number of the relocator, and of the location to which the vehicle will be relocated, if different; (4) The fee charged by the relocator to recover the unauthorized vehicle and whether cash, check or credit cards will be accepted in payments; and (5) A notice that towing relocators and operators are regulated by the Illinois Commerce Commission. Such notice shall include the Commission's telephone number and internet address at which complaints about a relocator or operator can be filed with the Commission." MCC 9-84-010(d)

94. "Prior to relocating any unauthorized vehicle, the relocator or operator shall take at least one photograph of the unauthorized vehicle which clearly shows: (i) the date and time the photograph was taken; (ii) the entire vehicle and its location on the date and time the photograph was taken; and (iii) the vehicle's license plate. The relocator shall maintain the photographs, in electronic or print format, for a period of two years from the date on which it was taken. The relocator shall provide the photographs, without charge, to the owner of the relocated vehicle, upon request." 9-84-025(a)

95. "The relocator shall install on-board cameras on all vehicles used by the relocator to relocate unauthorized vehicles. These cameras shall clearly document: (i) views of the unauthorized vehicle from the front and rear of the relocator's vehicle; (ii) audio from inside the relocator's vehicle; and (iii) the date and time the video and audio are captured. The relocator shall: (1) maintain the video records, in electronic format, for a period of one year from the date on which it was captured; and (2) upon request by the relocated vehicle's owner, provide an electronic copy of the video records, without charge, to such owner; and (3) upon request, make such video records available for inspection by the Department of Business Affairs and Consumer Protection or by any Alderman." 9-84-025(b)

96. "No relocator shall relocate any vehicle from private property nor shall any person accept in storage an unauthorized vehicle towed unless at the time of the relocation the relocator had liability insurance in effect in the name of such relocator as provided in Section 9- 44-050." 9-84-030

97. *"Chicago Towing Bill of Rights – Posting – Required.* Each relocator shall post a copy of the Chicago Towing Bill of Rights, as set forth in subsection (b) of this section, conspicuously in the area of their lot or facility where persons retrieve relocated vehicles. Such posting, which shall be labeled the Chicago Towing Bill of Rights, shall be on a page or poster not less than 11 inches in width and 17 inches in height. In addition, the relocator shall provide a paper copy of the Chicago Towing Bill of Rights to all persons retrieving a vehicle from the relocator's lot or facility." 9-84-036(a)

98. MCC 9-84-036(b) requires the following:

*Chicago Towing Bill of Rights*

Pursuant to the Illinois Compiled Statutes, Illinois Administrative Code, and Municipal Code of Chicago, the following requirements apply when any vehicle is towed from private property:

1. No vehicle shall be relocated from any private property without the written

consent of the private property owner or his authorized agent to conduct such removals.

2. No vehicle shall be relocated from a lot which does not, at the time of the tow and for at least 24 hours prior thereto, have signs posted in compliance with applicable laws and regulations.

3. Relocators shall print and make available to the public all authorized rates and charges for towing or for otherwise moving and storing vehicles in connection with the removal of unauthorized vehicles from private property.

4. Except for vehicles that require a commercial driver's license to operate, no vehicle shall be relocated if: (i) the owner of the vehicle or the owner's agent is present or arrives on the scene before the vehicle is completely removed from the private property, and (ii) such owner or agent can produce the ignition key or other ignition device for the vehicle, and (iii) such owner or agent is able to remove and immediately does remove the vehicle from the private property. If the vehicle requires a commercial driver's license to operate, no vehicle shall be relocated if the owner or operator of such vehicle: (i) is present or arrives on the scene before the vehicle is completely removed from the private property, and (ii) such owner or operator can produce the ignition key to the vehicle, and (iii) such owner or operator is able to and does immediately remove the vehicle from the private property, and (iv) such owner or operator pays a reasonable service fee of not more than one-half of the posted rate of the towing service.

5. Relocators must notify the Chicago Police Department within 30 minutes after relocating any unauthorized vehicle.

6. Relocators must accept any of the following methods of payment for lawful fees and charges: United States currency, commonly recognized traveler's checks, money orders, cashier's checks, certified checks, and commonly accepted credit cards and debit cards.

7. In the event the owner of any relocated vehicle is not able to immediately pay to retrieve the vehicle, the relocator must provide the owner with access to the vehicle to retrieve any of the owner's personal belongings. The relocator is permitted to accompany the owner to the vehicle while the owner removes his or her belongings.

8. Upon request, the relocator must provide the owner of any relocated vehicle with a photograph of the vehicle taken before it was towed that clearly shows the date and time the photograph was taken, the vehicle's location, and the vehicle's license plate number. Upon request, the relocator must also provide the vehicle owner with relevant electronic video records of the relocation.

9. When the owner retrieves his or her vehicle, or upon request, the relocator must provide the owner of the relocated vehicle with a copy of this "Bill of Rights" along with other relevant statutes, regulations, and ordinances governing relocation operations.

10. Formal complaints about the relocator can be made by contacting the Illinois

18

Commerce Commission at (847) 294-4326 or can be filed online at www.icc.illinois.gov.

99. "The commissioner of business affairs and consumer protection and the superintendent of police are hereby authorized to promulgate rules to enforce this chapter." 9-84-040(d)

## COUNT ONE— FRAUD AND MISREPRESENTATION AGAINST DEFENDANTS XL TOWING, SHERRY DI VITO, and MARCUS HARRIS

100. Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

101. XL TOWING and SHERRY DI VITO display their company towing signs in parking lots throughout Chicago, including but not limited to 770 W Gladys Ave.

102. XL TOWING company signs were placed improperly, not in clear view from entrances, and obstructed by other objects including other parked vehicles.

103. The towing signage was also void of specific statements indicating who is allowed to park in the area pursuant to MCC 9-84-10(d)(1)

104. XL TOWING and SHERRY DI VITO made representations, through their signage omissions and otherwise, that the parking spaces in parking lots including but not limited to 770 W Gladys Ave were available for public use and/or were the parking areas for the businesses and restaurants directly adjacent and attached to the lot, and/or other false misleading representation that XL TOWING and SHERYY DI VITO knew to be untrue.

105. XL TOWING, and SHERRI DI VITO improperly displayed towing signs in violation of MCC 9-84 and knew such postings were improper.

106. Xl TOWING and its owner SHERI DI VITO continues to improperly post towing signs furthering these violations and hazards against unsuspecting vehicle owners till today.

107.    MARCUS HARRIS and SHERRY DI VITO falsely represented the facts of the events that took place on and after the night of the towing of Plaintiff's vehicle, and MARCUS HARRIS and/or other agents of XL TOWING altered the tow receipt to cover these actions.

108.    The actions undertaken by XL TOWING, SHERRY DI VITO, and MARCUS HARRIS constitute fraud and/or misrepresentation, as these representations were material, false and/or made recklessly and that they were made with the intention that they be acted on and so that XL TOWING, SHERRY DI VITO, and MARCUS HARRIS could improperly tow Plaintiff's and other's vehicles under the guise that it was a proper towing, when in fact, the towing was improper and predatory.

109.    As a result of Defendants XL TOWING, SHERRY DI VITO, and MARCUS HARRIS' actions, Plaintiff's vehicle, and others similarly situated were and are improperly and illegally towed from various locations which includes, but is not limited to 770 W Gladys Ave in the City of Chicago, causing Plaintiff and other consumers, known and unknown, to incur damages and substantial costs.

110.    On information and belief, Plaintiff and other patrons relied on these representations when parking their vehicles to patron the restaurants and businesses in the building directly attached to the parking lot at 770 W Gladys Ave in Chicago.

111.    As a result of Defendants' representations, Plaintiff and others similarly situated incurred substantial costs and damages.

## COUNT TWO — TRESPASS TO CHATTELS AGAINST DEFENDANTS XL TOWING, SHERRY DI VITO, and MARCUS HARRIS

112.    Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

113.    MARCUS HARRIS, XL TOWING and its owner, SHERRY DI VITO, trespassed upon Plaintiff's vehicle for their own use when the vehicle was improperly towed from a private parking lot.

114.    MARCUS HARRIS, XL TOWING and its owner, SHERRY DI VITO, wrongfully and intentionally exerted distinct acts of dominion over Plaintiff's property.

115.    MARCUS HARRIS and XL TOWING damaged plaintiff's vehicle during the unauthorized tow.

116.    Based on information and belief, MARCUS HARRIS, XL TOWING and its owner, SHERRY DI VITO, withheld and/or destroyed video, audio, and photos they are required to hold and present to relevant authorities including Plaintiff, that would show the vehicle being damaged, pursuant to MCC 9-84-025(b).

117.    WESTERN NATIONAL found Plaintiff's vehicle damage to be estimated at $4477.76 (Exhibit B)

118.    Defendants' conduct constitutes trespass to chattels to Plaintiff's vehicle.

119.    Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS, acted intentionally, not in good faith, and/or were undertaken with malice.

## COUNT THREE —COMMON LAW CONVERSION AGAINST DEFENDANTS XL TOWING, SHERRY DI VITO, and MARCUS HARRIS

120.    Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

121.    Defendant XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS are in violation of the relevant State of Illinois, and City of Chicago, towing statutes and/or ordinances as further described herein.

122.    As a result of these violations, Defendants XL TOWING, and its owner SHERRY DI VITO, and MARCUS HARRIS did not legally tow Plaintiff's and other consumer's vehicles and were not in proper possession of Plaintiff's vehicle, thereby causing Plaintiff to suffer damages and incur substantial and unreasonable costs and injuries.

123.    On or about April 27, 2018, and on other occasions before and after that day, XL TOWING and its owner SHERRY DI VITO, and MARCUS HARRIS did convert vehicles owned by Plaintiff and other consumers for their own use when the vehicles were improperly towed from private parking lots including but not limited to 770 W Gladys Ave, in Chicago Illinois.

124.    On or about April 27, 2018, and on other occasions before and after that day, XL TOWING and its owner SHERRY DI VITO, and MARCUS HARRIS did possess, conceal, or aid in the concealment of converted property, as they knew that the property was stolen, embezzled, or converted from parking lots including but not limited to 770 W Gladys Ave.

125.    Plaintiff had a distinct right to immediate possession of, and to maintain possession of his vehicle and all property therein, and on or about April 27, 2018 plaintiff demanded that his property be returned, but was instead forced to pay an unreasonable cost to retrieve his vehicle after it had been towed improperly and illegally.

126.    Upon information and belief XL TOWING and its owner SHERRY DI VITO, and MARCUS HARRIS wrongfully exerted distinct acts of dominion over Plaintiff's property, as well as the property of other consumers.

127.    Defendants XL TOWING and its owner SHERRY DI VITO, and MARCUS HARRIS acted intentionally, not in good faith, and/or were undertaken with malice.

128.    XL TOWING and its owner SHERRY DI VITO, and MARCUS HARRIS therefore caused Plaintiff to incur costs and injuries for which he is entitled to damages, as well as other remedies Plaintiff may have at law or otherwise.

129.    Defendants' conduct constitutes common law conversion.

**COUNT FOUR — SECTION 1983 CLAIMS IN VIOLATION OF THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS AGAINST XL TOWING, SHERRY DI VITO and MARCUS HARRIS**

130.   Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

131.   Plaintiff and others similarly situated have fundamental property and liberty interests in remaining in possession of and using their vehicles. They further have an interest in not having their vehicles towed without adequate notice and remedy.

132.   The CITY OF CHICAGO is on notice of XL TOWING and SHERRY DI VITO's unconstitutional and illegal towing practices because plaintiff as a victim of the towing scheme, made reports to the respective police and city departments.

133.   Upon information and belief, XL TOWING & STORAGE, INC, is a one-person company and/or alter-ego of Defendant SHERRY DI VITO.

134.   Plaintiff's claims arise out of the procedures, customs, and practices of Defendants that violate the constitutional rights of Plaintiff and other consumers. Specifically, XL TOWING improperly seizes, impounds/stores, retains and/or disposes of vehicles, presumably under color of state laws and procedures, as the police departments are to be notified of, and/or authorize tows before or soon after they take place.

135.   Further, XL TOWING is required under 215 ILCS 5 and MCC 9-84 to inform tow victims that the tow is being carried out under the guidance and authorization of the city and state of CHICAGO, ILLINOIS, and therefore is acting ostensibly as an extension of these laws and regulations.

136.    In towing, administering, and disposing of vehicles on behalf of CHICAGO, XL TOWING and its owner, SHERRY DIVITO, and MARCUS HARRIS, act under the color of state law and are de facto state actors and extensions of the city and state and the regulations that govern them.

137.    Specifically, XL TOWING, SHERRY DI VITO, and MARCUS HARRIS (a) are encouraged to tow, hold, and exercise good judgement when releasing vehicles, (b) have a close relationship and are inescapably intertwined with law enforcement operations pursuant to procedure requirements, practices, contracts, and/or granting of towing permits, (c) are required by state and city agencies and state and city law and ordinances to inform consumers of their rights and remedies afforded by these departments and regulations, and (d) have been granted de facto authorization and discretion by CHICAGO and ILLINOIS to determine whether vehicles should be towed, released, and what should be charged to secure the release of vehicles.

138.    XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS, did conspire to interfere with Plaintiff's vehicle and property interests in violation of constitutional rights.

139.    That as a result of the conspiracy between XL TOWING, by and through its agents, and JOHN DOE employees, and/or SHERRY DI VITO and MARCUS HARRIS, Plaintiff was deprived the use of his vehicle and property interests for a period of time, in which he possess an interest.

140.    Defendants' policies, customs, and/or practices, combined with unconstitutional acts and omissions, prevent Plaintiff and those similarly situated from receiving adequate notice their property could be towed, and seeking adequate redress in court.

## **VIOLATIONS UNDER THE 1st AMENDMENT**

141.    Plaintiff and others similarly situated have a First Amendment right to petition the government for redress.

142.    Defendants XL TOWING, SHERRY DI VITO and MARCUS HARRIS are acting under state and city authority at all times relevant herein.

143.    Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS do not follow proper state and city law when towing vehicles of Plaintiff and others similarly situated.

144.    As a result, Plaintiff and other consumers do not receive the proper 'TOWING BILL OF RIGHTS' notice required to inform and protest the tow, tow fees, and damages described herein.

145.    The 'TOWING BILL OF RIGHTS' notice is the main remedy or avenue for Plaintiff and other consumers within Chicago to adequately be informed and petition the government for redress.

146.    As a result, Plaintiff and others similarly situated are forced to pay whatever storage fee and/or towing rate that Defendants XL TOWING and its owner, SHERYY DI VITO, and MARCUS HARRIS demand in order to retrieve their vehicles.

147.    Plaintiff has complained to the CITY OF CHICAGO, and the CITY OF CHICAGO POLICE DEPARTMENT JOHN DOES, and CHICAGO is therefore on notice of these constitutional violations.

148.    Plaintiff and others similarly situated therefore have had their 1st Amendment rights to petition the government for redress infringed upon as a direct result of the acts and omissions of Defendants XL TOWING, and its owner SHERRY DIVITO, and MARCUS HARRIS.

## **VIOLATIONS UNDER THE 8th AMENDMENT**

149.    The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

150.    Plaintiff and other consumers are coerced into paying towing, storage and other fees to retrieve their property after it has been wrongfully possessed.

151.   Defendants XL TOWING and SHERY DI VITO, and MARCUS HARRIS, acting under the authority of the state, charge illegitimate fees in order for Plaintiff and others similarly situated to retrieve their vehicles after they are towed unlawfully.

152.   There is no justification to charge for a tows that are illegitimate.

153.   Any charge or fine associated from an illegitimate tow is invalid and therefore excessive.

154.   This practice amounts to an excessive fine prohibited under the 8th Amendment.

155.   Defendants' conduct, by and through their policy or practice, violates Plaintiff's right to be free from excessive fines and cruel or unusual punishment pursuant to the 8th Amendment.

## VIOLATIONS UNDER THE 14th AMENDMENT

156.   Plaintiff and other consumers, operating vehicles in Chicago, have had their vehicles seized, retained, stored and/or disposed of without notice and/or with insufficient notice and lack of due process.

157.   Defendants' policies, customs, and/or practices of improperly notifying potential tow victims with sufficient signage and subsequently towing without authorization, and then demanding fees to regain possession of property, prevents Plaintiff and others similarly situated from (a) challenging in court the propriety of the seizing and holding of their vehicles, (b) challenging in court the reasonableness of the towing and storage fees, and (c) recovering their vehicles.

158.   As a result of these actions, Plaintiff and others similarly situated have either been provided with no fair opportunity to recover their property, been coerced into paying towing, storage, and other fees to either retrieve their property or legally challenge the taking, or have been financially precluded from legally challenging the taking of their property.

159. Plaintiff and other consumers are deprived of pre-deprivation notice in violation of the 14th Amendment because XL TOWING's signage does not meet the requirements to place Plaintiff and others on notice that their vehicles could be towed from parking lots as required by MCC 9-84 et. seq.

160. Plaintiff and others similarly situated have been towed without a pre- deprivation remedy and without proper notice as required by regulation.

161. These allegations have been caused by (a) XL TOWING, SHERRY DI VITO, and MARCUS HARRIS' failure to provide adequate notice and due process to persons from whom property has been seized, (b) reckless and deliberate indifference to a likelihood that the constitutional rights of the public, and particularly Plaintiff, would be violated, and (c) conspiracies among XL TOWING, SHERRY DI VITO and her/its agents with its towing company agents to deprive people of their property and rights.

162. Because Plaintiff and other consumers have been towed without adequate pre-deprivation notice, the adequacy of a post-deprivation remedy should be irrelevant; however, Plaintiff and others are not afforded adequate post- deprivation remedy as well.

163. The Fourteenth Amendment prohibits state actors from depriving an individual of liberty without due process of law. Included within this protection are the rights to notice and a hearing when a state actor deprives an individual of fundamental liberty and property interests.

164. Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS, have violated Plaintiff's federal and state due process rights by removing Plaintiff's vehicle, excluding Plaintiff from use of vehicle, and forcing him to pay unlawful fees to retrieve vehicle, without providing notice and consistently denying him a fair opportunity to be heard when challenging the fees and damages.

165. Pursuant to MCC 9-84 et. seq., the remedies in the Towing Regulation and the 'TOWING BILL OF RIGHTS' are among the exclusive remedies for the disposition of vehicle towing in CHICAGO.

166. As a result of omitting this notice from consumers with a tow receipt, the excessive fees that must be paid up front to even file a petition to challenge the fees and/or damages, and the fact that many vehicle owners, if not all, never receive the mandatory 'TOWING BILL OF RIGHTS' notice, the customary practice of XL TOWNG and its agents is unconstitutional, as it does not provide adequate notice and a fair opportunity to be heard.

167. All those who do not receive a copy of 'THE TOWING BILL OF RIGHTS' notice, and whose cars are towed by XL TOWING, do not have fair opportunity to learn of or be heard with regards to towing violations in CHICAGO.

168. Because of the way Defendants XL TOWING, SHERRY DI VITO, and MARCUS HARRIS are intertwined with the CITY OF CHICAGO, CITY OF CHICAGO POLICE DEPARTMENT JOHN DOES, and the CITY OF CHICAGO BUSINESS AFFAIRS AND CONSUMER PROTECTION agency, they are de facto state actors.

169. In addition to what has been described above, XL TOWING and its owner SHERRY DI VITO, and/or its agents, also assume the responsibility of performing all of the following additional functions on behalf of CHICAGO: (a) acting as custodian of vehicles in towing them to a tow yard and storing them there; (b) deciding if, when, and to whom vehicles should be released; (c) determining what documentation must be provided to secure the release of vehicles; (d) determining how much is required to be paid for vehicles to be released; (e) being obligated to report to CHICAGO whether vehicles remain in their custody for purposes of sending a notice to the Secretary of State with regards to liens, vehicle ownership, and vehicle abandonment; (f) providing police with a list of all parking lots at which they have contracts to tow — and whether those contracts permit towing only upon owner notification or whether they

allow the company to patrol the lot; (g) receiving advice from Chicago with respect to releasing vehicles; (g) within 24 hours submit a written report to the superintendent of police that contains the contact information of the relocator, the information on the car that was moved, when and where the car was moved, where it's being stored from and information on the person with whom the relocation agreement was made; and (h) determining the amount of bond or fees that is required to be paid in order for vehicle owners to even have the ability to challenge the taking of their vehicles in State District Court.

170. These functions, combined with the permitting, contracting, and statutory obligations alleged in the paragraphs above, render XL TOWING, SHERRY DIVITO and MARCUS HARRIS state actors and their conduct reasonably attributable to the state for purposes of this case.

171. By the improper and illegal actions of Defendants XL TOWING, SHERRY DI VITO, and MARCUS HARRIS, Plaintiff has been deprived of his federal right to property (i-e., possession of his seized vehicle and contents) in violation of the 14th Amendment, and 42 U.S.C. § 1983.

## COUNT FIVE — CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

172. Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

173. Defendants participated in the acts and omissions complained of herein and entered into a common scheme to conceal the true nature of the fraudulent business practices of XL TOWING in the city of Chicago, State of Illinois.

174. Each Defendant contributed to conceal the improper and illegal activities carried out by XL TOWING within Chicago.

175. Defendants jointly and severally conspired to accomplish an unlawful purpose or a lawful purpose by unlawful means.

176. Each Defendant entered into an agreement and concerted action to pursue the common purpose of: 1) concealing the illegitimate nature of Defendant's business practices from Plaintiff and the general public; 2) concealing the patterns of towing practices of XL TOWING and its agents from proper civil authorities; 3) attacking the credibility of Plaintiff and victims of the towing scheme; 4) protecting XL TOWING and its agents from criminal prosecution and statutory accountability; 5) taking steps to falsify, conceal, and/or destroy evidence related to Defendants conduct; 6) making affirmative representations regarding Defendants' actions and conduct to city and state officials and others, while failing to disclose negative information about Defendants' actions causing separate current harm; 7) allowing the fraudulent and deceptive activity of Defendants to continue in unsuspecting communities; 8) conceal the deliberate indifference of the constitutional rights violations of the public, and particularly Plaintiff.

177. The purpose behind the conspiracy was to Protect Defendants at Plaintiff's and other consumer's expense, proximately resulting in injury to Plaintiff.

178. As a result of the above-described conduct, Plaintiff has suffered the injuries and damages described herein.

179. Plaintiff is entitled to judgement against Defendants for actual and punitive damages in an amount sufficient to deter similar conduct by these Defendants.

## COUNT SIX — UNJUST ENRICHMENT AGAINST DEFENDANTS XL TOWING, SHERRY DI VITO, and MARCUS HARRIS

180. Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

181. Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS, tow vehicles owned by Plaintiff and others similarly situated improperly and illegally.

182. As a result of Defendants' illegal and improper actions, Plaintiff was forced to pay an unreasonable cost to retrieve his vehicle after it had been towed illegally.

183. The amount Plaintiff was made to pay to Defendants to retrieve his vehicle constitutes a benefit received by Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS.

184. The unlawful fee Plaintiff was forced to pay to Defendants to retrieve his vehicle resulted in inequity to Plaintiff because of the benefit retained by Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS.

185. Defendant's conduct constitutes unjust enrichment.

### COUNT SEVEN — UNJUST ENRICHMENT AGAINST DEFENDANTS WESTERN NATIONAL INSURANCE GROUP and PIONEER SPECIALTY INSURANCE Co.

186. Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

187. Defendants MARCUS HARRIS and XL TOWING towed Plaintiff's vehicle illegally and improperly.

188. MARCUS HARRIS and XL TOWING and possibly others affiliated with XL TOWING and its owner SHERRY DI VITO, damaged Plaintiff's vehicle during the tow and/or at the tow yard where Plaintiff's vehicle was stored.

189. WESTERN NATIONAL sent an adjuster to inspect the damages to Plaintiff's vehicle caused from the tow by MARCUS HARRIS and XL TOWING.

190. The adjuster advised WESTERN NATIONAL and Plaintiff that the damages she witnessed looked like those that resulted from a tow.

191. The estimate presented to and from WESTERN NATIONAL for these damages summed $4477.76. (Exhibit B)

192. WESTERN NATIONAL ignored these findings and never conducted a thorough investigation to determine the origin of the damages.

193. As a result of Defendant's improper bad faith actions Plaintiff was forced to incur unreasonable and excessive costs resulting from the improper tow.

194. The claim amount wrongfully withheld from Plaintiff for the damages to his vehicle resulting from the illegitimate tow, constitutes a benefit retained by WESTERN NATIONAL and PIONEER.

195. WESTERN NATIONAL obtained a benefit from the withholding of claim funds owed to Plaintiff which caused harm and resulted in inequity to Plaintiff because of the benefit retained by WESTERN NATIONAL and PIONEER. On information and belief, Defendants WESTERN NATIONAL and PIONEER know and are aware of XL TOWING's illegitimate tows, were willfully blind about the existence of the illegitimate towing, or should have known vehicles were being towed improperly and illegally had WESTERN NATIONAL exercised reasonable diligence in investigating all available information accessible to them and presented to them.

196. Further, Defendants WESTERN NATIONAL and PIONEEER continue to support and financially protect and insure these actions of XL TOWING in spite of being fully aware of the illegal activity.

197. Upon information and belief Plaintiff has reason to believe and does believe WESTERN NATIONAL and PIONEER did and do retain all premiums from the illegal contracts with XL TOWING and its owner SHERRY DI VITO.

198. The premiums collected by Defendants for known illegal insurance contracts constitutes a benefit retained by WESTERN NATIONAL and PIONEER.

199. The profits secured in the form of premiums from clients from illegal insurance contracts creates an inequity and hazard to consumers, and insults and violates public policy because of the benefit retained by Defendants.

200.    Under the circumstances of this case, given the harm caused by WESTERN NATIONAL, the knowledge they had of XL TOWING's conduct, and the benefit obtained by WESTERN NATIONAL through the retention of premiums and claim funds, it would be unjust to allow WESTERN NATIONAL to retain any benefits proximately caused by the wrongful and willful negligence of WESTERN NATIONAL and XL TOWING.

201.    Defendant's conduct constitutes unjust enrichment.

## COUNT EIGHT — DEFENDANTS XL TOWING, SHERRY DI VITO, and MARCUS HARRIS VIOLATED THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS 505

202.    Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

203.    Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS have knowingly, unfairly, and deceivingly, through concealment and omission and/or other ways, conveyed to Plaintiff and consumers that their vehicles are parked improperly using deceptive methods in violation of 815 ILCS 505 et. seq.

204.    Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS have knowingly, unfairly, and falsely conveyed to Plaintiff and consumers that Defendants have the authority to tow Plaintiff's and consumer's vehicles without being in compliance with local and state authority, rules, contracts and other regulations, using deceptive methods in violation of 815 ILCS 505 et. seq.

205.    Based on information and belief Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS towed vehicles owned by Plaintiff and others similarly situated, improperly and illegally.

206.    As a result of Defendants' improper and illegal actions, Plaintiff was made to pay and incur unreasonable costs and damages to retrieve his vehicle after it had had been towed illegally by XL TOWING and MARCUS HARRIS.

207. Defendants made fraudulent representations and omissions with regards to signage and other material facts.

208. Defendants XL TOWING, SHERRY DI VITO, and MARCUS HARRIS' actions constitute fraud and/or misrepresentation, concealment and/or omission of material fact, with the intent that others rely upon such material fact, so that XL TOWING, SHERRY DI VITO, and MARCUS HARRIS could improperly tow Plaintiff's and other's vehicles.

209. Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS have caused a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction in violation of 815 ILCS 505 et seq.

210. For the reason that Plaintiff is a consumer, Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS, are in direct violation of 815 ILCS 505 et. seq., and as a result of Defendants' representations, Plaintiff incurred substantial costs and damages.

**COUNT NINE — DEFENDANTS XL TOWING, WESTERN NATIONAL INSURANCE GROUP, PIONEER SPECIALTY INSURANCE Co., SHERRY DI VITO, and MARCUS HARRIS AIDED AND ABETTED TORTIOUS CONDUCT INCLUDING COMMON LAW CONVERSION, TRESPASS TO CHATTELS, and FRAUD AND MISREPRESENTATION**

211. Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

212. Defendants XL TOWING and its owner, SHERRY DI VITO, and MARCUS HARRIS have committed multiple tortious acts as described fully above.

213. Defendants WESTERN NATIONAL INSURANCE GROUP and PIONEER SPECIALTY INSURANCE CO have aided and abetted this tortious conduct, including, but not limited to:

    A. Aiding and abetting common law conversion;

    B. Aiding and abetting trespass to chattels and;

    C. Aiding and abetting fraud and misrepresentation.

214.    Upon information and belief, Defendants WESTERN NATIONAL INSURANCE GROUP and PIONEER SPECIALTY INSURANCE CO knew that XL TOWING and its owner, SHERRY DI VITO, were and are committing wrongful acts described in this Complaint, when they continued to afford the safety and protection of financial coverage to XL TOWING, and did nothing to address the known illegal behavior, whilst allowing XL TOWING to remain in business and in the business of the illegitimate towing of vehicles.

215.    Defendants WESTERN NATIONAL and PIONEER substantially assisted XL TOWING and/or SHERRY DI VITO in committing tortious conduct when they allowed and/or authorized protective financial contracts to the towing company and legal assistance without being in compliance with statutory and regulatory authority, which allowed XL TOWING to remain in business and tow and damage vehicles illegally without fear or concern for accountability and/or criminal prosecution.

216.    On information and belief, PIONEER and WESTERN NATIONAL did not cancel any contracts or make reference to the illegitimateness of or the illegality of such contracts. The contracts remained active and WESTERN NATIONAL continues to afford the wrongful protection to XL TOWING who has remained in business and a hazard to the community and commerce.

217.    Defendants WESTERN NATIONAL and PIONEER were on notice of XL TOWING's illegal and predatory operations, as Plaintiff made multiple references to and forwarded judgments against and liable pleas from XL TOWING in relation to these operations, and that they had occurred before and after the date of Plaintiff's tow, and have continued since. Plaintiff has made clear the nature of these actions by XL TOWING and the possible violations by WESTERN NATIONAL and PIONEER.

218. In fact WESTERN NATIONAL and PIONEER made reference to the fraudulent behavior of XL TOWING and the spoliation of evidence, and acknowledged the statutory violation and followed up by stating Plaintiff had the option to take matter up in court.

219. Defendants WESTERN NATIONAL and PIONEER's consistent actions constitute aiding and abetting tortious conduct.

## COUNT TEN — PUBLIC NUISANCE AGAINST ALL DEFENDANTS

220. Plaintiff incorporates and realleges all factual allegations in the previous paragraphs as if set forth herein, and further states:

221. Residents and visitors of Illinois, and the greater Midwest have a common right to be free from conduct that unreasonably interferes with the general public's right to public wellbeing, public safety, and conduct that disrupts the peace and comfort of members of the general public.

222. Each Defendant continues to conspire and engage and/or has conspired and engaged in efforts to: 1) conceal from the general public the fraudulent activity and rights violations of XL TOWING; and/or 2) conceal from proper civil authorities illegal towing practices and unauthorized tows committed by XL TOWING against the citizens and visitors of Chicago Illinois; and/or 3) on information and belief, attack the credibility of victims of Defendants and/or 4) on information and belief, protect XL TOWING and its agents from criminal prosecution for their illegal actions against victims; and/or 5) after receiving notice and reports of misconduct allow and support XL TOWING's behavior to continue freely in the community unknown to the public, in violation of law; and/or 6) make affirmative representations regarding Defendants' bad faith business practices and fitness for service; and/or 7) concealing Defendant's actions from potential unsuspecting vehicle owners.

223.    The negligence and/or deception and concealment by each Defendant was and is a significant and unreasonable interference with the peace, health, safety, and comfort of the general public, including, but not limited to, residents of Illinois and all other members of the general public who live and visit communities where XL TOWING and its agents operate and live. Defendants' failure to address allegations of fraud and predatory towing in accordance with proper authorities as well as its failure to inform the public about consumer fraud, or XL TOWING's persistent denial of consumer's rights, has prevented the public from knowing of a real hazard, and has thereby significantly threatened the wellbeing of the general public by allowing XL TOWING to avoid accountability and/or prosecution and remain freely in business in unsuspecting communities. These fraudulent acts, known to Defendants but not to the public, pose a threat of exploitation to the general public.

224.    The negligence and/or deception and concealment by the Defendants was and is injurious to Plaintiff's wellbeing because Plaintiff has had to forgo freedoms afforded him by the protections and rights under Illinois regulation, and thus suffered distress at the actions of defendants.

225.    Defendants' significant and unreasonable interference with the peace, health, safety, and comfort of the general public was also specially injurious to Plaintiff's wellbeing in that when Plaintiff finally discovered the negligence and/or deception and concealment, Plaintiff experienced mental, emotional and/or physical distress that he had been the victim of the Defendants' negligence and/or deception and concealment.

226.    Plaintiff's injuries are also particular and different from certain members of the public who have not been harmed by the nuisance. People who have not been harmed by the nuisance include those who have not suffered any injury at all, those who are unaware of the nuisance, those who do not believe that Defendants ever concealed anything about illegal towing practices, and those who think that any concealment only occurred at one time.

227. The continuing public nuisance created by Defendants was, and continues to be, the proximate cause of unreasonable interference with the peace, health, safety and comfort of the general public and of Plaintiff's injuries and damages as alleged.

228. In doing the aforementioned acts, Defendants acted negligently and/or intentionally, maliciously and with conscious disregard for the public and Plaintiff's rights.

229. As a result of the above-described conduct, Plaintiff has suffered injuries and damages more particularly described above and such other damages to which witnesses in this case may testify.

WHEREFORE, Plaintiff respectfully prays:

(a) A judgement be entered declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

(b) A judgement be entered against defendants for substantial compensatory damages in an amount not less than Sixty Thousand Dollars ($60,000) by the proofs at trial and that the Court deems just and proper;

(c) That judgement be entered against defendants for punitive damages in an amount not less than Two Hundred Thousand Dollars ($200,000)

(d) That plaintiff recover his reasonable expenses and attorney's fees from defendants;

(e) That all costs of this action be taxed to the Defendants;

(f) Enter an injunction prohibiting XL TOWING from continuing to tow vehicles from parking lots marked with deficient signs, and until they come into compliance with all relative statutory and regulatory requirements;

(g) That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

(h)     Plaintiff reserves his right to supplement claims and damage submissions on the underlying merits of the Complaint and alleges that discovery of claims and damages are ongoing as other offenses may be discovered in the process of litigation.

**A TRIAL BY JURY IS DEMANDED**

Dated:  November 17, 2021                     Respectfully submitted,

By: _____
                                                                  Plaintiff

Christopher Hanley
300 Cambie St
Vancouver, BC, Canada
Phone: (303) 534-5268
Email: cchhmail@zoho.com



**IN THE CITY OF CHICAGO, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**



|  |  |
|---|---|
| **CITY OF CHICAGO**, a Municipal Corporation, Petitioner, ) | Address of Violation:<br>770 W Gladys;3565 W Columbus |
| v. ) | |
| ) | |
| Xl Towing Storage Inc ) | Docket #: 19CS003959 |
| 3565 W COLUMBUS AV ) | |
| CHICAGO, IL 60652 ) | Issuing City |
| , Respondent. ) | Department: Business Affairs and Consumer Protection |

<u>**FINDINGS, DECISIONS & ORDER**</u>

This matter coming for Hearing, notice given and the Administrative Body advised in the premises, having considered the motions, evidence and arguments presented, IT IS ORDERED: As to the count(s), this tribunal finds by a preponderance of the evidence and rules as follows:

| *Finding* | *NOV#* | *Count(s)* | *Municipal Code Violated* | *Penalties* |
|---|---|---|---|---|
| City non-suit | R861978699 | 1 | 9-84-030 Insurance required. | $0.00 |
| City non-suit | R861978700 | 2 | 9-84-030 Insurance required. | $0.00 |
| City non-suit | R861978702 | 5 | 9-84-020 Removal of vehicle by owner or legal possessor of vehicle | $0.00 |
| | | 6 | 9-84-040(c) Relocating an unauthorized vehicle. | $0.00 |
| City's motion to amend the charge(s) - Granted | R861978704 | 8 | 2-25-090(e)(2) Order such person to pay restitution to persons aggrieved by the practice | $0.00 |
| Liable - By plea | R861978700 | 3 | 9-84-010 Report--Definition--Procedure. | $250.00 |
| Liable - By plea | R861978701 | 4 | 9-84-010 Report--Definition--Procedure. | $250.00 |
| Liable - By plea | R861978703 | 7 | 2-25-090(A) No person shall engage in any act of consumer fraud, unfair method of competition, or deceptive practice while conducting any trade or business in the city. | $500.00 |
| Liable - By plea | R861978704 | 9 | 000001 | $0.00 |

**Sanction(s):**

Restitution to aggrieved 3rd party        $172.50

Count 9 is a violation 2-25-090 (f)(2) Respondent to pay restitution, in the sum of, $ 172.50 payable through the City of Chicago, Department of Revenue, for the benifit of the Complaining Witness, Chris Hanley of 310 Cambe Street, Vancouver, British Columbia V6P2N3

**Admin Costs:** $40.00

**JUDGMENT TOTAL:** $1,040.00 plus $172.50 Restitution

**Balance Due:** $1,212.50

Respondent is ordered to come into immediate compliance with any/all outstanding Code violations.

19CS003959

PLAINTIFF'S
EXHIBIT

B
_____

|  |  |
|---|---|
| Date: | 7/23/2018 11:53 AM |
| Estimate ID: | 0218070159 |
| Estimate Version: | 0 |
| Committed |  |
| Profile ID: | * PDA CO |

# Property Damage Appraisers (PDA Boulder, CO)

6100 Southwest Blvd. Suite 200, Fort Worth, TX 76109
(303) 860-1064
Fax: (303) 889-5292
Email: pdaboulder@pdaorg.net

*Not An Authorization For repair*
Read disclaimers following appraisal calculations.

| | | | |
|---|---|---|---|
| Damage Assessed By: | Kayla Bewersdorff | Appraised For: | Josh Sharpe |
| Classification: | Field | | |

| | | | |
|---|---|---|---|
| Condition Code: | Good | Type of Loss: | Property Damage |
| Date of Loss: | 4/27/2018 | | |
| Contact Date: | 7/20/2018 | | |
| Deductible: | 0.00 | | |
| File Number: | 0218070159 | | |
| Claim Number: | 1000002487-01 | | |

| | | | |
|---|---|---|---|
| Insured: | Chris Henely | | |
| Owner: | Chris Henely | | |
| Address: | 300 Cambie St, Vancouver, BC V6B 2N3 | | |
| Telephone: | Work Phone: (303) 534-5268 | Cell Phone: | (303) 534-5268 |

Mitchell Service: 911377

| | | | |
|---|---|---|---|
| Description: | 2011 Volkswagen Jetta TDI | Vehicle Production Date: | 12/10 |
| Body Style: | 4D Sed | Drive Train: | 2.0L Turbo Inj 4 Cyl Dsl 6A FWD |
| VIN: | 3VWDL7AJ4BM053029 | License: | FMW888 NS |
| Mileage: | 173,622 | | |
| OEM/ALT: | A | | |
| Parts Profile: | Denver | Parts Profile Version: | 6 |
| Color: | black | | |
| Options: | PASSENGER AIRBAG, POWER LOCK, POWER WINDOW, POWER STEERING, REAR WINDOW DEFOGGER | | |
| | AIR CONDITION, CRUISE CONTROL, TILT STEERING COLUMN, AM/FM STEREO, DRIVER AIRBAG | | |
| | HEATED EXTERIOR MIRROR, FRONT SIDE AIRBAG WITH HEAD PROTECTION | | |
| | ANTI-LOCK BRAKE SYS., TRACTION CONTROL, FOG LIGHTS, ALUM/ALLOY WHEELS | | |
| | TIRE INFLATION/PRESSURE MONITOR, NAVIGATION SYSTEM, AUXILIARY INPUT | | |
| | BLUETOOTH WIRELESS CONNECTIVITY, LEATHER STEERING WHEEL, SATELLITE RADIO | | |
| | CD PLAYER, POWER ADJUSTABLE EXTERIOR MIRROR, SUNROOF/MOONROOF, TRIP COMPUTER | | |
| | FIRST ROW BUCKET SEAT, SIDE AIRBAGS, MP3 PLAYER, DAYTIME RUNNING LIGHTS | | |
| | DRIVER SEAT WITH POWER LUMBAR SUPPORT, ELECTRONIC STABILITY CONTROL | | |
| | FRONT HEATED SEATS, KEYLESS ENTRY SYSTEM, REAR BENCH SEAT | | |
| | STEERING WHEEL AUDIO CONTROLS | | |

| Line Item | Entry Number | Labor Type | Operation | Line Item Description | Part Type/ Part Number | Dollar Amount | Labor Units |
|---|---|---|---|---|---|---|---|
| 1 | 100191 | BDY | REMOVE/INSTALL | Frt Bumper Cover | | | 1.1 # |
| 2 | 101005 | BDY | REMOVE/REPLACE | R Frt Combination Lamp Assembly | Remanufactured | 180.00 | 0.4 # |
| 3 | AUTO | BDY | CHECK/ADJUST | Headlamps | | | 0.4 |
| 4 | 100989 | BDY | REPAIR | Hood Panel | Existing | | 1.0* |
| 5 | | REF | REFINISH/REPAIR | Hood Panel | | | C 2.3* |
| 6 | | | | MODIFIED REFINISH WITH FULL CLEAR COAT | | | |
| 7 | 101223 | BDY | REMOVE/INSTALL | Hood Insulator | Existing | | 0.4 r |
| 8 | 101949 | BDY | REMOVE/INSTALL | R Fender Splash Guard | | | 0.2 |
| 9 | 101970 | BDY | REPAIR | R Fender Panel | Existing | | 3.5*# |
| 10 | AUTO | REF | REFINISH | R Fender Outside | | | C 2.0 |
| 11 | 101979 | BDY | REMOVE/REPLACE | R Fender Liner | ** QUAL REPL PART | 80.00 | 0.4 |
| 12 | 101980 | BDY | REMOVE/REPLACE | L Fender Liner | ** QUAL REPL PART | 80.00 | 0.4 |
| 13 | 100513 | BDY | REMOVE/REPLACE | Engine Under Cover | ** QUAL REPL PART | 108.00 | 0.4 |
| 14 | 102697 | BDY | REPAIR | R Frt Door Shell | Existing | | 3.5*# |

ESTIMATE RECALL NUMBER: 07/23/2018 11:53:49 0218070159
Mitchell Data Version: OEM: JUL_18_V0716 Alternate Parts: 07/23/2018 11:43:44

Copyright (C) 1994 - 2018 Mitchell International
All Rights Reserved

Software Version: 7.1.229

| | | | | Date: | 7/23/2018 11:53 AM |
| | | | | Estimate ID: | 0218070159 |
| | | | | Estimate Version: | 0 |
| | | | | Committed | |
| | | | | Profile ID: | * PDA CO |

| | | | | | | |
|---|---|---|---|---|---|---|
| 15 | | REF | REFINISH/REPAIR | R Frt Door Shell | | C 2.1* |
| 16 | | | | MODIFIED REFINISH WITH FULL CLEAR COAT | | |
| 17 | 102698 | BDY | REMOVE/REPLACE | L Frt Door Shell | ^^OE SURPLUS | 766.34 | 5.5 # |
| 18 | AUTO | REF | REFINISH | L Frt Door Outside | | C 2.2 |
| 19 | AUTO | REF | REFINISH | L Frt Add For Jambs & Interior | | C 1.0 |
| 20 | AUTO | MCH | REMOVE/REPLACE | L Frt Add To R&I/R&R Side Air Bag Sensor | | 0.4 # |
| 21 | 100973 | BDY | REMOVE/INSTALL | R Frt Rear View Mirror | | 0.7 # |
| 22 | 100974 | BDY | REMOVE/INSTALL | L Frt Rear View Mirror | | INC # |
| 23 | 100314 | BDY | REMOVE/INSTALL | R Frt Otr Door Belt Moulding | | 0.4 |
| 24 | 100315 | BDY | REMOVE/INSTALL | L Frt Otr Door Belt Moulding | | INC |
| 25 | 101473 | BDY | REMOVE/INSTALL | R Frt Door Trim Panel | | INC |
| 26 | 931104 | MCH | CHECK/ADJUST | FRONT END ALIGNMENT | Sublet | 49.99 * | 0.0* |
| 27 | 101548 | BDY | REMOVE/INSTALL | R Frt Otr Door Handle | | 0.3 |
| 28 | 101549 | BDY | REMOVE/INSTALL | L Frt Otr Door Handle | | INC |
| 29 | 101447 | BDY | REMOVE/REPLACE | L Frt Door Window Guide | 5C6 837 431    5AP | 305.00 | INC # |
| 30 | 101581 | BDY | REPAIR | L Rear Door Shell | Existing | 2.0* |
| 31 | | REF | REFINISH/REPAIR | L Rear Door Shell | | C 2.1* |
| 32 | | | | MODIFIED REFINISH WITH FULL CLEAR COAT | | |
| 33 | 100323 | BDY | REMOVE/INSTALL | L Rear Otr Door Belt Moulding | | 0.4 |
| 34 | 101598 | BDY | REMOVE/INSTALL | L Rear Door Trim Panel | | 0.4 |
| 35 | 101664 | BDY | REMOVE/INSTALL | L Rear Otr Door Handle | | 0.3 |
| 36 | 100488 | REF | REFINISH | L Roof Rail | | C 1.6*# |
| 37 | 100381 | BDY | REPAIR | L Door Opening Panel | Existing | 1.0*# |
| 38 | 101160 | BDY | REMOVE/REPLACE | L Frt Door Opening Weatherstrip | 5C6 867 911 J  9B9 | 161.67 | 0.4 |
| 39 | 936012 | | ADD'L COST | Hazardous Waste Disposal | | 3.00 * |
| 40 | 933002 | REF | ADD'L OPR | Clear Coat | | 2.5* |
| 41 | 900500 | BDY * | ADD'L LABOR OP | Car Cover | Sublet | 5.00 * | 0.3* |
| 42 | 933005 | BDY | ADD'L OPR | Restore Corrosion Protection | | 10.00 * | 0.3* |
| 43 | AUTO | | ADD'L COST | Paint/Materials | | 450.00 * |

* - Judgment Item
\# - Labor Note Applies
** - QUAL REPL PART - Quality Replacement Parts
C - Included in Clear Coat Calc
r - CEG R&R Time Used For This Labor Operation

| HEADLAMPS AMERICA | KEYSTONE-INS QUALITY PRT | HEWLETT VW OEMD |
|---|---|---|
| WWW.HEADLAMPSAMERICA.COM | 1727 JETSTREAM DR. | 200 COMMERCE BL. |
| | COLORADO SPRINGS | GEORGETOWN |
| 94120 | CO 80921 | TX 78626 |
| (888) 760-1296 | (303) 333-9911  (800) 289-5300 | (800) 901-2990 |

| 2 | ** 5C7941006 | 180.00 | 13 | ** VW1228123 | 108.00 | 17 | ^^5C6831055G | 766.34 |

KEYSTONE-INS QUALITY PRT
4955 KALAMATH ST.
DENVER
CO 80329
(800) 551-5608  (303) 333-9911

| 11 | ** VW1249120C | 80.00 |
| 12 | ** VW1248120C | 80.00 |

Prior Damage:
upd to R rocker, L fender, windshield

Date: 7/23/2018 11:53 AM
Estimate ID: 0218070159
Estimate Version: 0
Committed
Profile ID: * PDA CO

# Estimate Totals

| I. Labor Subtotals | Units | Rate | Add'l Labor Amount | Sublet Amount | Totals |
|---|---|---|---|---|---|
| Body | 23.7 | 52.00 | 10.00 | 5.00 | 1,247.40 |
| Refinish | 15.8 | 52.00 | 0.00 | 0.00 | 821.60 |
| Mechanical | 0.4 | 90.00 | 0.00 | 49.99 | 85.99 |
| | Non-Taxable Labor | | | | 2,154.99 |
| Labor Summary | 39.9 | | | | 2,154.99 |

| II. Part Replacement Summary | | | Amount |
|---|---|---|---|
| Taxable Parts | | | 1,681.01 |
| Sales Tax | @ | 8.845% | 148.69 |
| Total Replacement Parts Amount | | | 1,829.70 |

| III. Additional Costs | | | Amount |
|---|---|---|---|
| Taxable Costs | | | 453.00 |
| Sales Tax | @ | 8.845% | 40.07 |
| Total Additional Costs | | | 493.07 |

Paint Material Method: Rates
Init Rate = 32.00  , Init Max Hours = 99.9, Addl Rate = 0.00

| IV. Adjustments | Amount |
|---|---|
| Insurance Deductible | 0.00 |
| Customer Responsibility | 0.00 |

| | | | |
|---|---|---|---|
| I. | Total Labor: | | 2,154.99 |
| II. | Total Replacement Parts: | | 1,829.70 |
| III. | Total Additional Costs: | | 493.07 |
| | Gross Total: | | 4,477.76 |
| IV. | Total Adjustments: | | 0.00 |
| | Net Total: | | 4,477.76 |

**THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF ONE OR MORE CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE. WARRANTIES, IF ANY, APPLICABLE TO THESE REPLACEMENT CRASH PARTS ARE PROVIDED BY THE PARTS MANUFACTURER OR DISTRIBUTOR RATHER THAN BY THE MANUFACTURER OF YOUR VEHICLE.**

Point(s) of Impact
2 Right Front Side (P), 9 Left Side (S)

Insurance Co: WESTERN NATIONAL MUTUAL INS CO
Address: 5350 W 78TH ST
EDINA, MN  55439
Work Phone: (612) 835-5350

Inspection Site: Safeway Parking lot
Boulder, CO
Inspection Date: 7/23/2018

ESTIMATE RECALL NUMBER: 07/23/2018 11:53:49  0218070159
Mitchell Data Version: OEM: JUL_18_V0716     Alternate Parts: 07/23/2018 11:43:44
Copyright (C) 1994 - 2018 Mitchell International
All Rights Reserved
Software Version:      7.1.229
Page 3  of  4

Date:  7/23/2018 11:53 AM
Estimate ID:  0218070159
Estimate Version:  0
Committed
Profile ID:  * PDA CO

*****************************Notice*********************************
This is not an authorization for repair. All costs of repairs are the
sole responsibility of the vehicle owner, who must authorize all
repairs. Failure to deliver a copy of this appraisal to the repair
shop by the vehicle owner may result in out of pocket expense to the
vehicle owner. Providing a copy of this appraisal is not an acceptance
 of coverage or liability and all issues of coverage or liability are
to be determined by the insurance carrier.
*****************************Notice*********************************
Deductibles may or may not be addressed or included in this appraisal.
 If applicable, the repairer should collect the deductible from the
vehicle owner prior to the release of the repaired vehicle.
*******************Supplement Procedure Notice*********************
It is the repairer's responsibility to send notification of the
supplement via fax or email to PDA fax (800)866-4732 or
pdaboulder@pdaorg.net, including a statement whether the repairs have
been halted on the vehicle. PDA will respond to your request within 24
 hours. Please allow 48 hours to complete supplement processing from
the date of request to ensure timely release of the vehicle.


*****************************Notice*********************************
This appraisal is subject to the complete review and approval by the
assigning insurance company to assure accuracy, cost effectiveness,
and that accepted industry repair standards are met. The insurance
company listed has the right to accept or reject any part or all of
this appraisal or make any changes they feel necessary.


COLORADO LAW REQUIRES US TO NOTIFY YOU OF THE FOLLOWING:  It is
unlawful to knowingly provide false, incomplete, or misleading facts
or information to an insurance company for the purpose of defrauding
or attempting to defraud the company.  Penalties may include
imprisonment, fines, denial of insurance, and civil damages. Any
insurance company or agent of an insurance company who knowingly
provides false, incomplete, or misleading facts or information to a
policy holder or claimant for the purpose of defrauding or attempting
to defraud the policy holder or claimant with regard to a settlement
or award payable for insurance proceeds shall be reported to the
Colorado Division of Insurance within the Department of Regulatory
Agencies.




**It is unlawful to knowingly provide false, incomplete, or misleading
facts or information to an insurance company for the purpose of
defrauding or attempting to defraud the company. Penalties may include
imprisonment, fines, denial of insurance and civil damages. Any insurance
company or agent of an insurance company who knowingly provides false,
incomplete, or misleading facts or information to a policyholder or
claimant for the purpose of defrauding or attempting to defraud the
policyholder or claimant with regard to a settlement or award payable
from insurance proceeds shall be reported to the Colorado Division of
Insurance within the Department of Regulatory Agencies.**

ESTIMATE RECALL NUMBER: 07/23/2018 11:53:49  0218070159
Mitchell Data Version: OEM: JUL_18_V0716    Alternate Parts: 07/23/2018 11:43:44

Copyright (C) 1994 - 2018 Mitchell International
All Rights Reserved

Software Version:      7.1.229