UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HANLEY, | ) |
| | ) |
| Plaintiff, | ) Case No. 21 C 2256 |
| | ) |
| v. | ) Judge Jorge L. Alonso |
| | ) |
| XL TOWING & STORAGE, INC., SHERRY DI VITO, MARCUS HARRIS, WESTERN NATIONAL INSURANCE GROUP, and PIONEER SPECIALTY INSURANCE CO., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Defendants' motion [28] to dismiss is granted in part and denied in part. Plaintiff's motion [30] for extension of time is granted. Plaintiff is granted leave to file a third amended complaint by June 21, 2022. If plaintiff files an amended complaint, defendants' deadline to answer or otherwise plead is July 19, 2022. If plaintiff does not file an amended complaint, defendants' deadline to answer is July 19, 2022.

**STATEMENT**

After his automobile was towed from a parking lot while he was dining at a nearby restaurant in Chicago, *pro se* plaintiff Christopher Hanley ("Hanley") made a federal case of it.[1]

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2), which grants district courts original jurisdiction over civil actions where the amount in controversy is greater than $75,000.00 and is between "citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2). Plaintiff, a citizen of Canada domiciled in British Columbia, alleges that the amount in controversy exceeds $75,000.00. (Docket 21 ¶¶ 4, 11). Plaintiff is not a permanent resident of the United States. (Docket 9 ¶ 11). Plaintiff alleges that defendant XL Towing & Storage, Inc. is an Illinois corporation with its principal place of business in Illinois. (Docket 21 ¶ 5). Plaintiff alleges that defendants Sherry Di Vito and Marcus Harris are citizens of Illinois. (Docket 21 ¶¶ 6-7). Plaintiff alleges that Western National Insurance Group is a mutual insurance company organized under the laws of Minnesota and with a principal place of business in Minnesota. (Docket 9 at ¶ 15). Whether a mutual insurance company is a corporation depends on state law, and, under Minnesota law, mutual insurance companies are corporations. *Mutual Service Casualty Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548, 550-51

Plaintiff has filed a ten-count second-amended complaint against the towing company, its owner, its employee and two insurance companies. Defendants move to dismiss.

## *Background*

The following facts are from plaintiff's complaint, and, for purposes of this motion to dismiss only, the Court takes them as true.

On or about April 27, 2018, plaintiff parked his vehicle in a parking lot located at 770 W. Gladys in Chicago before he dined at an adjacent restaurant. After dinner, he returned to the lot and discovered that his car was missing. When he called 311 to report his vehicle stolen, plaintiff was told that no towing company had reported towing the car. Employees of a nearby bar, however, informed plaintiff that they had seen his car being towed away.

Plaintiff then searched the parking lot and found three signs. Two of the signs were obscured from view by vehicles and the third sign faced Jackson Boulevard such that it could not be seen from the parking lot's entrance on Gladys. The signs contained a phone number for defendant XL Towing & Storage, Inc. ("XL Towing").

Plaintiff telephoned XL Towing and was told to meet the tow-truck driver (defendant Marcus Harris ("Harris")) at 3565 W. Columbus Avenue in Chicago. Plaintiff took a LYFT to the address and "demanded his vehicle be returned." (2nd Am. Complt. ¶ 47). Under duress, plaintiff paid a fee (the amount of which is not alleged in his complaint) to retrieve his car. Harris handed plaintiff a hand-written receipt but did not give him a copy of the *Towing Bill of Rights*. Later, plaintiff discovered that his vehicle had been damaged.

---

(7th Cir. 1988). Finally, plaintiff alleges that Pioneer Specialty Insurance Co. is a Minnesota corporation with its principal place of business in Minnesota. (Docket 9 ¶ 16). This Court has jurisdiction under 28 U.S.C. § 1332(a)(2).

Plaintiff attempted to obtain compensation for his damaged car from defendant Sherry Di Vito ("Di Vito"), who owns XL Towing, and from defendant Western National Insurance Group ("Western National"), which seems to be an insurance carrier for XL Towing. Plaintiff also attempted unsuccessfully to obtain from Di Vito and Western National the video and photographic evidence of his vehicle being towed.

Plaintiff sought additional help. First, he contacted the office of Alderman Pawar. That office suggested that plaintiff complain to the Chicago Department of Business Affairs, and plaintiff did so. The Chicago Department of Business Affairs filed an administrative action against XL Towing, which was found "Liable—By plea" on four counts, including a count for engaging "in any act of consumer fraud, unfair method of competition, or deceptive practice while conducting any trade or business in the city." [Docket 21 at 40]. XL Towing was fined $1,000.00 and ordered to pay plaintiff (via the City of Chicago) restitution in the amount of $172.50. [Docket 21 at 40].

Plaintiff was not satisfied. He filed this suit, asserting ten counts against defendants.

### *Standard on a motion to dismiss*

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680-681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b). That means a plaintiff must include allegations "describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

*Analysis*

**Common-law fraud**

In Count I, plaintiff asserts a claim for fraud against defendants XL Towing, Di Vito and Harris. Plaintiff alleges that XL Towing's signs at the parking lot "were placed improperly" such that they could not easily be seen. (2nd Am. Complt. ¶ 102). Those signs were "void of specific statements indicating who is allowed to park in the area[.]" (2nd Am. Complt. ¶ 103). Plaintiff alleges that XL Towing and Di Vito "made representations through their signage

4

omissions and otherwise, that the parking spaces in parking lots including . . . 770 W. Gladys Ave were available for public use[.]" (2nd Am. Complt. ¶ 104).

Under Illinois law, the elements of common-law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (Ill. 1996) (emphasis added). Fraud, pursuant to Rule 9(b), must be alleged with particularity, which means "describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737.

As to defendants XL Towing and Di Vito, plaintiff does not allege any affirmative misstatement. He does not, for example, allege that the posted sign stated that he (or the public generally) could park in the lot. Rather, plaintiff alleges an omission. Specifically, he alleges that XL Towing and Di Vito "made representations through their signage omissions and otherwise, that the parking spaces in parking lots including . . . 770 W. Gladys Ave were available for public use[.]" (2nd Am. Complt. ¶ 104). In other words, plaintiff alleges defendants, by failing to inform him that he could not park there, were informing him that he could. Plaintiff believes that omission constituted fraud.

Such an omission does not constitute common-law fraud under Illinois law. *See Nelson v. Great Lakes Educational Loan Services, Inc.*, 928 F.3d 639, 649 (7th Cir. 2019). There, the Seventh Circuit explained:

> One foundation of the law of fraud and negligent misrepresentation is the difference between an affirmative misrepresentation and a failure to disclose. The common law tort of fraud ordinarily requires a deliberately false statement of material fact. An omission or failure to disclose, on the other hand, will not support a common law fraud claim but may be actionable as constructive fraud or fraudulent concealment if the defendant was under a particular duty to speak,

5

>which may stem from a fiduciary duty or a similar relationship of trust or confidence.

*Nelson*, 928 F.3d at 649. Plaintiff has not alleged that defendants had a fiduciary relationship with him such that they had a duty to disclose to him that he was not allowed to park in the lot in which he took the risk of parking.

Plaintiff's fraud claim against XL Towing and Di Vito is dismissed without prejudice for failure to state a claim. Plaintiff makes no allegations as to any misrepresentations by defendant Harris, so Count I is dismissed as to Harris, as well.

**Conversion and trespass to chattels**

In Count II, plaintiff asserts a claim for trespass to chattels against defendants XL Towing, Di Vito and Harris. In Count III, plaintiff asserts a claim for conversion against those three defendants.

The Illinois Supreme Court, which applies the Restatement (Second) of Torts when it considers conversion claims, has said, "[t]he essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *In re: Thebus*, 108 Ill.2d 255, 259 (Ill. 1985) (citation omitted). To state a claim, one must allege "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *In re Karavidas*, 999 N.E.2d 296, 310 (Ill. 2013). Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Thebus*, 108 Ill.2d at 259 (citing Restatement (Second) of Torts § 222A (1965)).

6

Under Illinois law, a towing company's "[w]ithholding chattel until a plaintiff pays storage fees constitutes a conversion where the defendant does not have a valid possessory lien." *Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill.App.3d 461, 473 (First Dist. 2007). An Illinois statute, however, grants "a possessor lien for services" to towing companies with respect to "[v]ehicles removed from public or private property," 625 ILCS 5/4-203(g)(3). Thus, in order to state a claim for conversion, plaintiff would need to allege that defendants lacked such a lien. Plaintiff has not done so. Accordingly, plaintiff's claim for conversion is dismissed without prejudice.

Next, plaintiff asserts trespass to chattels, a tort similar to conversion. If one commits a trespass to chattels, he can be liable for impairment of the condition, quality or value of the chattel. Restatement (Second) of Torts § 218. Trespass to chattels may be committed by "(a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Restatement (Second) of Torts § 217. Intermeddling means "intentionally bringing about a physical contact with the chattel . . . as when the actor throws a stone at another's automobile[.]" Restatement (Second) of Torts § 217(e).

Defendants move to dismiss Count III. Plaintiff alleges that Harris, XL Towing's employee, damaged his car when he towed it. Defendants argue that plaintiff has failed to state a claim, because plaintiff has not alleged sufficient facts that show defendants towed the car for their own use. Defendants have not cited any cases that suggest such allegations are necessary. The examples in the Restatement do not suggest that the physical contact with the chattel must be for the actor's "own use." Defendants have given the Court no reason to dismiss Count II.

**§ 1983**

In Count IV, plaintiff seeks relief under § 1983 against defendants XL Towing, Di Vito and Harris. Plaintiff asserts that these defendants violated his constitutional rights under the First, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that defendants violated the First Amendment by failing to provide the *Towing Bill of Rights* notice. Plaintiff alleges in ¶ 53 that it was on the night his car was towed that Harris failed to provide the *Towing Bill of Rights* notice. Next, plaintiff alleges defendants violated the Eighth Amendment prohibition on excessive fines by "coer[ing him] into paying towing, storage and other fees to retr[ie]ve" his car. (2nd Am. Complt. ¶ 150). That coercion occurred on the night plaintiff's car was towed, as is clear from his allegation that he took a LYFT to the lot and paid under duress. (2nd Am. Complt. ¶¶ 45, 50). Finally, plaintiff alleges he was "deprived of pre-deprivation notice" in violation of the due process clause of the Fourteenth Amendment because the signs at the lot were not sufficient. (2nd Am. Complt. ¶ 159). That, too, occurred the night plaintiff parked in the lot.

Defendants argue that Count IV should be dismissed as time barred. As defendants point out, in Illinois, claims under § 1983 must be brought within two years. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). A statute of limitations is an affirmative defense, and the Court will not dismiss on the basis of an affirmative defense unless the plaintiff has alleged (and thus admitted) the ingredients of the affirmative defense. *Tobey*, 890 F.3d at 645. Here, plaintiff has done so.

The conduct that, according to plaintiff, constitutes constitutional violations (failing to give him a copy of the *Towing Bill of Rights* with his receipt, depriving him of pre-deprivation notice by not including sufficient information on the signs in the parking lot, and coercing him

8

into paying an excessive fine to retrieve his car) all happened to him on the night his car was towed. He alleges that occurred on or about April 27, 2018. Plaintiff did not file his claims within two years of that date. Rather, he filed his original complaint on April 27, 2021, i.e., three years after the claims accrued.

Plaintiff's § 1983 claims are time-barred, and they are dismissed as such. Count IV is dismissed with prejudice.[2]

**Conspiracy**

In Count V, plaintiff asserts against all defendants a state-law claim for conspiracy to conceal fraud. Under Illinois law, the elements of conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by an unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill.2d 302, 317 (Ill. 2004).

This claim fails for two reasons. First, "[c]onspiracy is not a separate tort in Illinois; it is a means of establishing vicarious liability among coconspirators for an underlying tort." *3DGS LLC v. Chai Trust Co. LLC*, Case No. 19 CV 7524, 2020 WL 7353406 at *10 (N.D. Ill. Dec. 15, 2020). Here, plaintiff has not stated a claim for fraud, so he has not stated a claim for conspiracy.

Second, where, as here, the alleged conspiracy involves allegations of fraud, Rule 9(b) applies to the entire claim, including to allegations of an agreement. *Borsellino v. Goldman*

---

[2] Even if Count IV were not time-barred, the claim would still fail as a matter of law, because the Seventh Circuit has said "a towing company is not a state actor[.]" *Scott v. Archey*, 99 Fed. Appx. 62, 63 (7th Cir. 2004) (citing *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 192-93 (7th Cir. 1985)). Nor is its owner, *Hinman*, 771 F.2d at 192-93, or its employee.

*Sachs Group, Inc.*, 477 F.3d 502, 507 & 509 (7th Cir. 2007) ("Here, the complaint tells us nothing about the nature of the purported agreement to defraud plaintiffs, such as when it was made or which individuals at [defendant] arranged the conspiracy."). Plaintiff has alleged defendants "entered into a common scheme to conceal the true nature of the fraudulent business practices of XL Towing[.]" (2nd Am. Complt. ¶ 173). He does not, however, allege who, what, when, where or how. Count V is dismissed without prejudice.

### Unjust enrichment

In Counts VI and VII, plaintiff asserts that defendants were unjustly enriched. To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (Ill. 1989). In the usual case, a plaintiff seeks to recover a benefit he, himself, transferred to the defendant. The Illinois Supreme Court has said that the retention of a benefit transferred to a defendant by a third party could be actionable as unjust where: "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefits from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than defendant." *HPI*, 131 Ill.2d at 161-62.

In Count VI, plaintiff asserts that XL Towing, Di Vito and Harris were unjustly enriched in the (unspecified) amount plaintiff paid "under duress" to retrieve his car. Defendants argue this claim should be dismissed, because, as plaintiff has also alleged, XL Towing was ordered to pay plaintiff $172.50 in restitution. Defendants seem to be arguing that plaintiff's unjust enrichment claim is, thus, moot. If the amount plaintiff paid to retrieve his car were the same

amount he received in restitution, then the Court would agree that the claim would be moot. Plaintiff, however, has not alleged the amount he paid to retrieve his car. Count VI may proceed against XL Towing. As to defendants Di Vito and Harris, plaintiff does not allege that they received the money he paid to retrieve his car, so he has not stated a claim against them. Count VI is dismissed as to defendants Di Vito and Harris.

In Count VII, plaintiff asserts that defendants Western National and Pioneer were unjustly enriched by not compensating plaintiff for damages (estimated to be $4,477.76) to his car. Plaintiff alleges that his car was damaged by defendants Harris, Di Vito and XL Towing when plaintiff's car was towed.

As defendants point out, this claim is, in effect, a direct action against an insurance company for damages at the hands of its insured. Such a claim is not allowed under Illinois law. *Richardson v. Economy Fire and Casualty Co.*, 109 Ill.2d 41, 47 (Ill. 1985) ("[T]he public policy of this State prohibits an injured party from recovering personal injury damages directly from an insurance carrier on account of the negligence of its insured prior to obtaining a judgment against the insured."); *see also Morgan v. National RR Passenger Corp.*, Case No 18 C 3379, 2019 WL 414714 at *3 (N.D. Ill. Feb. 1, 2019).

Accordingly, Count VII is dismissed without prejudice and without leave to amend.

**Illinois Consumer Fraud**

In Count VIII, plaintiff asserts that defendants XL Towing, Di Vito and Harris violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 et seq. To state a claim, plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5)

proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (Ill. 2005).

Defendants argue that this claim should be dismissed, because plaintiff has not alleged that he is a consumer or that defendants' conduct implicates consumer protection concerns. The Illinois Supreme Court has held that students could not state claims under the ICFA, because they "were not consumers" as that term was defined in the act. *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 328 (Ill. 1977)[3]; *see also Norton v. City of Chi.*, 267 Ill.App.3d 507, 510 (First Dist. 1994) ("a group of private citizens who allegedly committed parking violations" were not consumers who could bring a claim under the ICFA). Here, plaintiff has not alleged that he was a consumer of defendants' product or service. He has not, for example, alleged that he purchased parking services from the lot owner and then sued the lot owner for fraud after the lot owner towed his car despite his having paid. He has, instead, sued the company (and its owner and employee) hired by the lot owner to remove his car. Plaintiff has not alleged any facts that suggest he was a consumer, rather than a trespasser. Plaintiff has not cited any cases that suggest the alleged conduct is actionable under the Illinois Consumer Fraud Act.

Count VIII is dismissed without prejudice.

---

[3] As a federal court considering this case under diversity jurisdiction, this Court's job is to predict how the Illinois Supreme Court would decide the issue. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("As a federal court sitting in diversity jurisdiction, our task is to predict how the Illinois Supreme Court would decide issues presented here."); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). Illinois Appellate courts have allowed businesses to sue under the ICFA, so long as the challenged conduct "implicates consumer protection concerns." *See Bank One Milwaukee v. Sanchez*, 336 Ill.App.3d 319, 323-24 (Sec. Dist. 2003).

**Aiding and abetting**

In Count IX, plaintiff asserts that defendants Western National and Pioneer aided and abetted tortious conduct by Di Vito, Harris and XL Towing. Specifically, plaintiff asserts that Western National and Pioneer aided and abetted fraud, conversion and trespass to chattels.

Under Illinois law, aiding and abetting is not an independent tort, but it is a means "for holding the person who aids and abets liable for the tort itself." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Thus, one who aids and abets a fraud is also guilty of that fraud. *Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019). To state a claim under Illinois law for aiding and abetting a tort, a plaintiff must allege "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant is aware of his role when he provides the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Fifth Third*, 934 F.3d at 588.

Having failed to state a claim for fraud, plaintiff likewise fails to state a claim that any defendant aided or abetted fraud. Plaintiff's claim that Western National and Pioneer aided or abetted fraud is dismissed without prejudice.

Next, plaintiff asserts that these defendants aided and abetted conversion and trespass to chattels. The claim is flawed in several respects. First, because plaintiff did not state a claim for conversion, he likewise fails to state a claim for aiding and abetting conversion. Second, plaintiff does not allege the elements of aiding and abetting. Plaintiff has not alleged that either Western National or Pioneer was aware of its role when providing assistance or that it knowingly and substantially assisted. Finally, this claim is, in effect, a direct action against an insurance carrier, because the damages plaintiff seeks on his conversion and trespass to chattels claims consist of the damage to his vehicle when it was towed. As explained above, such an action is

13

not allowed under Illinois law. Accordingly, plaintiff's claim that defendants Western National and Pioneer aided and abetted conversion and trespass to chattels is dismissed without prejudice and without leave to amend.

**Public nuisance**

In Count X, plaintiff asserts a claim for public nuisance against all defendants. Plaintiff alleges that the public has a right to wellbeing, public safety and peace. Plaintiff alleges defendants interfered with those rights by concealing the fraudulent activity of XL Towing, attacking the credibility of XL Towing's victims and supporting XL Towing.

Defendants argue that plaintiff has not plausibly alleged an interference with a public right. The Court agrees.

The elements of a claim for public nuisance include: "the existence of a public right, a substantial and unreasonable interference with that right by the defendant, proximate cause, and injury." *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 369 (Ill. 2004). The Illinois Supreme Court, which applies the Restatement (Second) of Torts in considering public nuisance claims, has noted that public rights include "public health, public safety, public peace, public comfort, and public convenience." *Beretta*, 213 Ill.2d at 370-71 (citing Restatement (Second) of Torts § 821B(2)(a)). In *Beretta*, the Illinois Supreme Court described the types of interferences with public rights that have been considered actionable:

> Cases involving the right of public safety have involved nuisances created by vicious dogs, the storage of explosives, blasting, the storage or use of fireworks, or the presence of unsafe buildings. The right of public peace has been disrupted by disorderly houses, unruly taverns, and dance halls. Public comfort has been affected by odors, fumes, dust, and other sources of pollution. Such nuisances have affected the public generally.

*Beretta*, 213 Ill.2d at 371-72 (citations omitted). The Restatement (Second) of Torts adds:

> A public right is one common to all members of the general public. It is collective in nature and *not like the individual right that everyone has not to be* assaulted or defamed or *defrauded* or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.

Restatement (Second) of Torts § 821B *comment (g)* (1979) (emphasis added).

Plaintiff has not alleged an interference with a public right, i.e., one common to the general public. Plaintiff has not alleged defendants were using the parking lot in a way that constituted a public nuisance. For example, plaintiff has not alleged defendants used the lot to store explosives that could harm the public on the nearby road or that defendants were sending fumes from the lot onto the public sidewalk. Instead, he is attempting to allege interference with a private right—his own—not an interference with a public right. He is attempting to allege that defendants either defrauded *him* or helped XL Towing defraud *him*. He is troubled that *his* car was towed from a parking lot and that *he* was not sufficiently warned not to park there.

That plaintiff is concerned others might also be defrauded does not make the issue one of interference with a public right. Plaintiff has not alleged that the lot was owned by the city and available to the public for parking. He has not alleged the public at large has a right to access the lot. Thus, plaintiff has not alleged a problem that affects the public generally. Only someone who parks in the lot without authorization would be towed from the lot or otherwise affected by XL Towing's alleged failure to include sufficient signage. Plaintiff has not alleged interference with a right exercised by the public at large, because the public at large has no right to access the lot. That is why, for example, a pothole in a mall parking lot is not a public nuisance. *See Burns v. Simon Properties Group, LLP*, 996 N.E.2d 1208, 1212-1213 (Ill.App.Ct. 2013) ("[T]he nuisance is not a public one if it occurs in a place of business to which an invitee has no public

15

right to go. . . . [P]laintiff was not exercising a right common to the public at the time she entered the parking lot for the purpose of patronizing Macy's. Therefore, we agree with the trial court's dismissal of the plaintiff's complaint . . . because she failed to state a cause of action for public nuisance."). Likewise, plaintiff has not alleged he was exercising a right common to the public when he chose to leave his car in the parking lot.

Plaintiff has not stated a claim for public nuisance, so Count X is dismissed without prejudice.

**Alter Ego**

Finally, defendant Di Vito argues that the counts against her should be dismissed, because, as plaintiff alleges, she owns XL Towing. She points out that, as a shareholder, she is not personally liable for the actions of the corporation.

"A corporation is an entity separate from its shareholders, officers, directors and employees in that these parties cannot generally be held liable for the debts or obligations of the corporation." *Snyder v. Dunn*, 265 Ill.App.3d 891, 895 (First Dist. 1994). Piercing the corporate veil is an equitable remedy that allows a plaintiff to obtain relief from a shareholder who is the alter ego of a corporation. *See International Fin. Serv. Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 736-37 (7th Cir. 2004). "The corporate form may be disregarded only when a court can conclude that the corporation is merely the alter ego or business conduit of a dominant personality." *Snyder*, 265 Ill.App.3d at 895. In order to pierce the veil, a plaintiff must show "(1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity." *Snyder*, 265

16

Ill.App.3d at 895. A unity of interest can be shown by inadequate capitalization, failure to observe corporate formalities and commingled funds. *Snyder*, 265 Ill.App.3d at 896.

Plaintiff alleges in his complaint that "XL TOWING & STORAGE, INC. is a one-person company and/or alter-ego of Defendant SHERRY DI VITO." (2nd Am. Complt. ¶ 133). That conclusory allegation is not entitled to be taken as true (*Iqbal*, 556 U.S. at 680-681), and plaintiff includes no allegations that plausibly suggest the corporate veil should be pierced. He includes no allegations as to corporate formalities, capitalization or commingling of funds. To the extent plaintiff is attempting to hold Di Vito liable for XL Towing's actions, the claims are dismissed without prejudice.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part defendants' motion [28] to dismiss. Counts I, III, V, VIII, X are dismissed without prejudice. Count II is dismissed without prejudice as to defendant Di Vito. Count VI is dismissed without prejudice as to defendants Di Vito and Harris. Count IX is dismissed without prejudice as to fraud. Count IX is dismissed without prejudice and without leave to amend as to conversion and trespass to chattels. Count IV is dismissed with prejudice. Count VII is dismissed without prejudice and without leave to amend. Plaintiff's motion [30] for extension of time is granted.

Plaintiff is granted leave to file a third amended complaint by June 21, 2022. If plaintiff files an amended complaint, defendants' deadline to answer or otherwise plead is July 19, 2022. If plaintiff does not file an amended complaint, defendants' deadline to answer is July 19, 2022.

SO ORDERED.  ENTERED: May 24, 2022

_____
JORGE L. ALONSO
United States District Judge