IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HANLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 21-cv-2256 |
| ) | Hon. LaShonda A. Hunt |
| XL TOWING & STORAGE, INC., ) | Magistrate Judge Sheila M. Finnegan |
| SHERRY DI VITO, individually and as ) | |
| owner/registered agent of XL Towing and ) | |
| Storage, Inc., MARCUS HARRIS, ) | |
| individually and as owner/registered agent ) | |
| of XL Towing and Storage, Inc., ) | |
| WESTERN NATIONAL INSURANCE ) | |
| GROUP, and PIONEER SPECIALTY ) | |
| INSURANCE CO., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, the Motion to Dismiss Plaintiff's Third Amended Complaint [45] filed by Defendants XL Towing & Storage, Inc. ("XL Towing"), Sherry DiVito, Marcus Harris, Western National Insurance Group ("Western National"), and Pioneer Specialty Insurance Co. ("Pioneer") is granted in part and denied in part. Counts I, VI, and IX of Plaintiff's Third Amended Complaint [38] are dismissed.[1] Count VIII against XL Towing will not be dismissed.

---

[1] Judge Alonso previously dismissed Counts IV (42 U.S.C. § 1983), V (Civil Conspiracy), VII (unjust enrichment against Western and Pioneer), and X (Public Nuisance) of Plaintiff's Second Amended Complaint [33], and Plaintiff did not re-plead those claims in his Third Amended Complaint. Furthermore, in his response brief in opposition to the instant motion, Plaintiff moved to voluntarily dismiss Counts VI (unjust enrichment against XL Towing) and IX (aiding and abetting fraud and misrepresentation against Western and Pioneer) of the Third Amended Complaint, as well as all claims against Defendants DiVito, Harris, Western National, and Pioneer. [49 at p. 2.] The Court grants that motion. As a result, the only remaining claims relevant to this motion are for Fraud and Misrepresentation against XL Towing (Count I) and violations of the Illinois Consumer Fraud and Deceptive Business Practices Acts against XL Towing (Count VIII). Defendants have not sought dismissal of Counts II (Trespass to Chattels) and III (Conversion) of the Third Amended Complaint.

1

## **BACKGROUND**

The following facts are from Plaintiff's Third Amended Complaint (38), and, for purposes of this motion to dismiss only, the Court takes them as true. On or about April 27, 2018, Plaintiff parked his vehicle in a parking lot located at 770 W. Gladys Avenue in Chicago before he dined at an adjacent restaurant. (Third Am. Cmplt. at ¶¶ 24-25.) After dinner, he returned to the lot and discovered that his car was missing. (*Id.* at ¶ 27.) Employees of a nearby bar informed Plaintiff that they had seen his car being towed away. (*Id.* at ¶ 31.) Plaintiff then searched the parking lot and found three no-parking signs; two of the signs were obscured from view by vehicles and the third sign faced Jackson Boulevard such that it could not be seen from the parking lot's entrance on Gladys. (*Id.* at ¶ 32.) Plaintiff alleges that XL Towing "intentionally omit[s] signage at the parking lot to create a 'private tow zone' trap that they then use to grab cars and tow them to their storage." (*Id.* at ¶ 37.)

Plaintiff called the number for XL Towing on the signs and was told to go to the company's tow yard at 3565 W. Columbus Avenue in Chicago to retrieve his vehicle. (*Id.* at ¶¶ 39-40.) Plaintiff took a LYFT to the address and "demanded his vehicle be returned." (*Id.* at ¶¶ 41, 44). Allegedly under duress, Plaintiff paid a fee to retrieve his car. (*Id.* at ¶ 45.) Harris, a driver for XL Towing, then gave Plaintiff an invoice "indicating that, prior to the tow there were damages to the front side of Plaintiff's car and on the car's roof;" Plaintiff maintains that no such damages existed prior to the towing. (*Id.*at ¶¶ 47, 51.) Plaintiff noticed the next day that the right fender of his car was dented and scraped, the right door was scraped, the hood of the car had a small hole in it, and that the car pulled to one side while driving. (*Id.* at ¶¶ 53-54.)

Plaintiff attempted to obtain compensation for his damaged car from Defendants Di Vito, who owns XL Towing, and Western National. (*Id.* at ¶ 55.) During a conversation between Di Vito and Plaintiff on April 28, 2018, Di Vito stated that the vehicle was not entered during the towing process. (*Id.* at ¶ 61.) However, following that meeting, "while driving at highway speeds, [Plaintiff] heard a new sound of air seeping through the driver door" and "found rust marks from apparent tools used to pry open the door to enter the vehicle." (*Id.* at ¶¶ 64-65.) An adjuster for Western National estimated the cost to repair Plaintiff's car at $4,477.76, but Western National denied the claim. (*Id.* at ¶72.)

Plaintiff also contacted the office of Alderman Pawar, and communications occurred between Alderman Pawar's office and Di Vito during which Di Vito allegedly misrepresented the state of the signage at the lot at the time Plaintiff parked in it. (*Id.* at ¶¶ 78-79.) Alderman Pawar's office suggested that Plaintiff file a complaint with the Chicago Department of Business Affairs, and Plaintiff did so. (*Id.* at ¶¶ 81-82.) After the Chicago Department of Business Affairs filed an administrative action against XL Towing, the company was found "Liable—By plea" on four counts, including a count for engaging "in any act of consumer fraud, unfair method of competition, or deceptive practice while conducting any trade or business in the city." (*Id.*, Ex. A.). XL Towing was fined $1,000.00 and ordered to pay Plaintiff (via the City of Chicago) restitution in the amount of $172.50. (*Id.*) Plaintiff then filed the instant suit and Defendants filed a motion to dismiss the latest complaint, which is now fully briefed and presently before the Court.

## DISCUSSION

### I. Legal Standard

Defendants have moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In ruling on a motion pursuant to

Rule 12(b)(6), the Court must treat the allegations in the complaint as true and give Plaintiff the benefit of any reasonable and favorable inferences from those allegations. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 646 (7th Cir. 2017.)

As previously noted, only two counts remain at issue against Defendant XL Towing in the Motion to Dismiss the Third Amended Complaint. XL Towing will succeed on its motion to dismiss Count I, but Count VIII is sufficient to state a claim.

## II. Count I – Fraud and Misrepresentation Against XL Towing

The Court grants the motion to dismiss Count I for fraud and misrepresentation against XL Towing. A cause of action for common law fraud in Illinois requires Plaintiff to prove: 1) a false statement or omission of a material fact; 2) knowledge or belief by the maker that the statement is false; 3) an intention to induce the plaintiff to act; 4) reasonable reliance upon the truth of the statement by the plaintiff; and 5) damage to the plaintiff resulting from such reliance. *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 653 N.E.2d 968, 972 (1995). A plaintiff seeking to prove fraud based on an omission of material fact (*i.e.*, fraudulent concealment) must establish that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. *Bauer v. Giannis*, 359 lll. App.3d 897, 902-903, 834 N.E.2d 952, 957-958 (2005) (citing *Schrager v. North Community Bank*, 328 Ill.App.3d 696, 706–07, 262 Ill.Dec. 916, 767 N.E.2d 376 (2002)).

Regarding the first element of a fraudulent concealment claim, a duty to disclose arises where "'plaintiff and defendant are in a fiduciary or confidential relationship' or in a 'situation where plaintiff places trust and confidence in a defendant, thereby placing defendant in a position of influence and superiority over the plaintiff.'" *Wigod v. Well Fargo Bank*, N.A., 673 F.3d 547, 571 (7th Cir. 2012) (quoting *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 675 N.E.2d 584, 593 (1996)). The Third Amended Complaint identifies several fraudulent statements or omissions, none of which are actionable.

First, Plaintiff alleges XL Towing "made representations, through their signage omissions and otherwise, that 1) the parking lot was available for public use, and 2) that individuals who used the parking lot to access the adjacent businesses would not have their vehicles towed for use of the space." (Third Am. Cmplt. at ¶ 16.) Essentially, Plaintiff states that XL Towing's poorly placed signage constituted an omission of material fact—namely, that Plaintiff would be towed if he parked in the lot.[2] This claim fails for two reasons. Plaintiff admitted there were signs in the parking lot warning him not to park there, but he did not see them. (*Id.* at ¶ 32.) Thus, Plaintiff has not adequately alleged that he could not have discovered the truth through reasonable inspection or that he was prevented from making a reasonable inspection. Further, no special relationship existed between Plaintiff and XL Towing that would raise a duty to speak on the part of XL Towing. None of the cases cited by Plaintiff establish that a towing company is in a fiduciary or confidential relationship with third parties who seek to park in a lot, or that the Illinois Vehicle Code, 625 ILCS 5/18, or Chicago Municipal Code create any such relationship. *See*

---

[2] To the extent that Plaintiff is attempting to shoehorn his claim into a material misrepresentation instead of an omission by including the words "and otherwise" in the language quoted above, the Court rejects any such argument. The Third Amended Complaint is devoid of any allegations that XL Towing or any of its agents made any affirmative representations to Plaintiff before he parked his car in the lot or XL Towing removed it.

*Bauer*, 834 N.E.2d at 960 (analyzing the Illinois Residential Real Property Disclosure Act).³ Therefore, a claim for fraudulent concealment is not viable based on the facts alleged in the Third Amended Complaint.

Next, Plaintiff alleges that the towing receipt XL Towing gave him contained misrepresentations "regarding the condition of Plaintiff's vehicle and existing damages to Plaintiff's vehicle prior to the vehicle being towed." (Third Am. Cmplt. at ¶ 105.) Plaintiff also alleges that Defendant Di Vito falsely told Plaintiff that XL Towing had not entered his vehicle during the towing process, but Plaintiff later discovered signs of forced entry on his vehicle. (*Id.* at ¶¶ 60-65.) However, Plaintiff fails to clearly state how he relied on those alleged misrepresentations. He does argue in his response brief that his decision to drive "at highway speeds" was a result of his reliance on XL Towing's statements through its agent Defendant Di Vito, and that driving at such speeds "likely exacerbated damages to his vehicle." [49 at 4]. Even assuming that decision constitutes actionable reliance, Plaintiff's allegations fail to establish that XL Towing's misrepresentations were made with the intent to induce Plaintiff to drive his car at speeds that would damage his automobile. Indeed, it is unclear what incentive XL Towing would have to convince Plaintiff to drive his car in a manner that caused more damage, and Plaintiff has posited no reason. Moreover, the Third Amended Complaint does not allege that Plaintiff's vehicle was damaged by driving too fast after it had been towed. While Plaintiff now suggests in his response brief that driving at "highway speeds" "likely exacerbated damage to his vehicle," [49 at 4], the Third Amended Complaint states that Plaintiff suffered damages because XL Towing improperly and illegally towed his car, and he was not reimbursed for "damages to his vehicle

---

³ The remainder of the cases Plaintiff cites arise in the real estate context and are not relevant to the facts alleged in the Third Amended Complaint. *Russow v. Bobola*, 2 Ill. App. 3d 837, 277 N.E.2d 769 (1972); *Poser v. Davis*, 76 Ill. App. 3d 638, 395 N.E.2d 133 (1979); *Heider v. Leewards Creative Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 613 N.E.2d 805 (1993).

caused by the unlawful tow of his vehicle." (Third Am. Cmplt. at ¶¶ 112-113.) As such, Plaintiff has not alleged a cause of action for common law fraud based on statements XL Towing made to Plaintiff after it had already towed his car.

Finally, the remainder of the alleged misrepresentations were made to third parties, such as Alderman Pawar and Western National, not Plaintiff. (*Id*. at ¶¶ 70-71, 107-108). Even if Plaintiff alleged that XL Towing had reason to expect that its misrepresentations to these third parties would be repeated to Plaintiff (which he has not),[4] he has not alleged what action he took in reliance on these statements made several months after his car was towed, XL Towing's intention for Plaintiff to rely on these misstatements, or how he was damaged by these misstatements. These alleged falsehoods also cannot form the basis for a common law fraud claim. Defendants' motion to dismiss Count I is granted.

### III. Count VIII – Illinois Consumer Fraud and Deceptive Business Practices Acts Against XL Towing

The Court denies the motion to dismiss Count VIII for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA") against XL Towing. Defendants' arguments regarding Plaintiff's IFCA claim are limited to the issue of Plaintiff's standing to bring such a claim. "To have standing to bring a claim under the ICFA, a plaintiff must either be a consumer or satisfy the 'Consumer Nexus Test,' which requires a plaintiff to allege 'conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Breeze v. Bayco Prods., Inc.*, 475 F. Supp. 3d 899, 906 (S.D. Ill. 2020) (quoting *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015)). The IFCA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for

---

[4] *See Stein v. D'Amico,* Case No. 86-cv-9099, 1989 WL 91874, at *3 (N.D. Ill. Aug. 8, 1989) ("The maker of a fraudulent misrepresentation or concealment can be liable to a third party if he intends or has reason to expect that his misrepresentation will be repeated to a third party"),

resale in the ordinary course of his trade or business but for his use or that of a member of his household." 825 ILCS 505/1(e). The consumer nexus test "requires plaintiffs to show '(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations ... concerned consumers other than [plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.'" *Roppo*, 100 F. Supp. 3d at 651 (quoting *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 298 Ill.App.3d 146, 232 Ill.Dec. 419, 698 N.E.2d 257, 268 (1998)).

In his opinion on Defendants' prior motion to dismiss, Judge Alonso held that Plaintiff was not a "consumer" as defined in the IFCA:

> Here, plaintiff has not alleged that he was a consumer of defendants' product or service. He has not, for example, alleged that he purchased parking services from the lot owner and then sued the lot owner for fraud after the lot owner towed his car despite his having paid. He has, instead, sued the company (and its owner and employee) hired by the lot owner to remove his car. Plaintiff has not alleged any facts that suggest he was a consumer, rather than a trespasser.

[33 at 12.]

Although Plaintiff attempted to amend his complaint to address this issue, those changes do not ameliorate the problem identified by Judge Alonso — *i.e.*, Plaintiff did not purchase or contract to purchase any services from XL Towing. The consumer vis-à-vis XL towing was the condominium association that contracted with XL Towing to tow away illegally parked cars in the building's lot, not Plaintiff. Judge Alonso's reasoning continues to apply with equal force to Plaintiff's Third Amended Complaint, such that the Court finds Plaintiff was not a "consumer" of XL Towing's services within the meaning of the IFCA.

On the other hand, the Court finds that Plaintiff's claims are sufficient to satisfy the consumer nexus test.[5] The IFCA "is to be liberally construed to eradicate all forms of unfair or deceptive practices." *Bank One Milwaukee v. Sanchez*, 336 Ill.App.3d 319, 324, 783 N.E.2d 217, 220 (2003). Additionally, "[t]he preamble to the [IFCA] states that it is 'to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill.App.3d 524, 531, 546 N.E.2d 33, 39 (1989) (quoting Ill.Rev.Stat.1987, ch. 121 ½, preamble to the Consumer Fraud and Deceptive Business Practices Act). Broadly, Plaintiff's claims allege that XL Towing intentionally obscured its signs so that unwary motorists would be lured into parking in the lot XL Towing had been hired to patrol and incur costs and risk damage when their cars were towed.

The Court concludes that paying to have a car removed from a towing lot is akin to a consumer's actions and satisfies the first element of the consumer nexus test. In addition, Plaintiff has adequately alleged that other vehicles were towed illegally due to XL Towing's failure to properly display its signage, thereby satisfying the requirement that consumers other than Plaintiff be affected. (Third Am. Cmplt. at ¶ 149.) Given the broad mandate of the IFCA by Illinois courts cited above, the Court believes that XL Towing's alleged actions sufficiently involve the wide swath of consumer protection concerns the IFCA was passed to address. Finally, the Court finds that Plaintiff's request that XL Towing be enjoined "from continuing to tow vehicles from parking lots marked with deficient signs, and until they come into compliance with all relative statutory and regulatory requirements" would serve the interests of consumers. (Id. at ¶ 162(f).)

---

[5] Defendants made no substantive arguments related to the consumer nexus test in either of their briefs in support of their motion to dismiss.

To be clear, the Court is ruling solely based on the allegations in the Third Amended Complaint, as is required at the motion to dismiss phase. Plaintiff will have the burden of proving that his claims meet the elements of the consumer nexus test through competent evidence as the case moves forward. For now, though, what he has alleged is enough to state a claim; thus, the Court denies Defendants' motion to dismiss Count VIII.

## **CONCLUSION**

Defendants' Motion to Dismiss [45] is granted in part and denied in part. The motion is granted as to Counts I, VI, and IX of Plaintiff's Third Amended Complaint. The motion is denied as to Count VIII against Defendant XL Towing. Defendant's deadline to answer the complaint is July 21, 2023.

Dated: June 30, 2023

                                                   LaShonda A. Hunt
                                                   United States District Judge